Stephen M. Harris, Bar No. 110626
stephen@smh-legal.com
THE LAW OFFICE OF STEPHEN M. HARRIS, APC
6320 Canoga Avenue, Suite 1500
Woodland Hills, California 91367
Telephone: (818) 924-3103
Facsimile: (818) 924-3079


Smith & Benowitz
Louis Benowitz, Bar No. 262300
louis@smithbenowitz.com
4515 Van Nuys Blvd., Suite 302
Sherman Oaks, CA, 91403

Attorneys for Plaintiff, ANNICA B. BOWEN,
a.k.a. ANNICA PALACIO, individually,
and on behalf of similarly situated employees

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNICA B. BOWEN, a.k.a. ANNICA PALACIO, individually, and on behalf of similarly situated employees,<br><br>Plaintiff,<br><br>v.<br><br>WILLOW SPRINGS MANAGEMENT CA, LLC, a Delaware Limited Liability Company, California HCJ EE Group, LLC, California Senior Living EE Group, LLC, Folsom Investors, L.P. dba, Empire Ranch Alzheimer's Special Care Center, , and DOES 1 -100, inclusive,<br><br>Defendants. | Case No. 2:20−CV−02318−TLN−KJN<br><br>Date: 4-21-22<br>Time   2:00 p.m.<br>Courtroom: 2<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS; MEMORANDUM OF POINTS AND AUTHORITES** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on April 21, 2022 at two p.m., or as soon thereafter as the matter may be heard in Courtroom 2 of the above-entitled Court, located at 501 I Street Sacramento, California, 95814, Plaintiff Annica Bowen a.k.a. Annica Palacio ("Plaintiff" or "Bowen") will and hereby do move this Court to:

1.   Preliminarily approve the Class Action and PAGA Settlement Agreement and Release ("Agreement" or "Settlement"), attached as Exhibit 1 to the Declaration of Stephen M. Harris ("Harris Declaration"), and preliminarily approve the Notice, attached as exhibit 2 to the Harris Declaration.

2.   Conditionally certify, for settlement purposes only, a settlement class of: "All current or former nonexempt caregivers working at the Willow Springs Facility, the Empire Ranch Facility, and/or the Blossom Grove Facility at any time between April 30, 2016, through September 2, 2021."

4.   Appoint Plaintiff as the Class Representative, and appoint Stephen M. Harris of the Law Offices of Stephen M. Harris, P.C., and Louis Benowitz of Smith and Benowitz as Class Counsel.

6.   Set a hearing date for final approval of the class action settlement.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the attached Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement; (3) the Harris Declaration, and the exhibits attached thereto, the Bowen Declaration, and the Benowitz Declaration; (4) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement, filed concurrently herewith; (5) the records, pleadings, and papers filed in this action; and (6) upon such other documentary and oral evidence or argument as may be presented to the Court at the hearing of this Motion.

DATED: March 7, 2022

THE LAW OFFICES OF STEPHEN M. HARRIS, P.C.


By: _____ /s/ Stephen M. Harris _____
Stephen M. Harris
Attorneys for Plaintiff ANNICA BOWEN
A.K.A. ANNICA PALACIO

2

**Table of Contents**

I. INTRODUCTION ....................................................................................... 1

II. FACTS AND PROCEDURE ....................................................................... 1

    A.    The Class Action Complaint ............................................... 2

    B.    Investigation And Discovery .............................................. 4

    C.    Mediation…………………………………………………………4

    D.    The Settlement Agreement ................................................. 4

    E.    The Proposed Settlement .................................................... 4

        1.    The Proposed Settlement Class ................................... 4

        2.    The Proposed Payments ............................................... 5

        3.    The Proposed Notice to the Class and Others of the Settlement ............................................................... 5

        4.    The Proposed Release of the Class ............................. 5

        5.    Attorneys' Fees, Costs and Enhancements ................. 6

III. ARGUMENT ............................................................................................ 6

    A.    The Proposed Class Action Settlement Should Receive Preliminary Approval ......................................................... 6

        1.    Overview of the Class Action Settlement Process and the Role of Preliminary Approval ......................... 6

    B.    Conditional Class Certification Is Appropriate for Settlement Purposes ............................................................................ 7

        1.    The Proposed Class Meets the Requirements of Rule 23 ........... 7

        2.    The Proposed Class Is Sufficiently Numerous and Ascertainable ............................................................. 7

        3.    There are Questions of Law and Fact that Are Common to the Class .................................................. 8

        4.    Plaintiff's Claims are Typical of the Proposed Settlement Class ......................................................... 9

        5.    Plaintiff and Plaintiff's Counsel Will Adequately Represent the Interests of the Proposed Settlement Class ........... 9

        6.    Common Issues Predominate Over Individual Issues ............... 10

        7.    Class Settlement Is Superior to Other Available Means of

i

Resolution.........................................................................................11

C.    Preliminary Settlement Approval…………………………………..11

D.    Analysis……………………………………………………………12

    1.    Evidence of Conflicts and Signs of Collusion………………12

    a.    Clear Sailing Provision……………………………………13

    b.    Preferential Treatment……………………………………..14

    2.    Settlement Within Range of Possible Approval………………15

    a.    Legal Issues Regarding Rest Breaks ........................................ 16

    b.    Potential Damages…………………………………………16

    c.    Gross Settlement In Light of Potential Recovery…………….18

    3.    Obvious Deficiencies………………………………………18

E.    The Proposed Notice Plan Meets the Requirements of Rule 23 .......... 18

F.    The PAGA Payment Should Be Approved…………………………19

IV. CONCLUSION ................................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ........................................................ 7

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ...................................................... 9

*Augustus v. ABM Security Services, Inc.*, 2 Cal.5th 257 (2016) ................................ 16

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) ................................................ 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................... 8, 9, 10, 11,12

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) .................................... 9

*Hubbs v. Big Lots Stores, Inc.*, 2018 WL 5264141(C.D. Cal., Mar. 16, 2018)........ 16

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258 (S.D. Cal. 1998)........................ 7,8

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir.2011) . 11, 12, 13, 14

*In re Heritage Bond Litig.*, 546 F.3d 667 (9th Cir. 2008) ........................................ 11

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019)....................... 7

*In re Lenovo Adware Litig.*, 2018 WL 6099948 (N.D. Cal. Nov. 21, 2018)....... 12,15

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000).............................. 10

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ...................................... 11

*Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718 (9th Cir. 2007) ................... 9

*Naranjo v. Spectrum Security Services, Inc.,* 40 Cal.App.5th 444 (2019) .............. 17

*Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008)................................................. 8

*Ritenour v. Carrington Mortgage Services, LLC,* 2018 WL 5858658 (C.D. Cal., Sept. 12, 2018) ........................................................................................................... 16

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) ................................................... 9

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)............................... 14

*Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, 2020 WL 5074392, at *10 (N.D. Cal. Aug. 27, 2020) ....................................................................................................... 12

*Roes v. SFBSC Mgmt.*, 944 F.3d 1035 (9th Cir. 2019)................................... 11,12,13

*Singh v. Roadrunner Intermodal Services, LLC* (E.D. Cal., May 29, 2018) 2018 WL 2412325....................................................................................... 12, 13, 15,18

*Stanton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ................................................. 15

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal. 2009) ........ 7

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) .................................... 13

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................ 7,8

*Wren v. RGIS Inventory Specialists*, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) . 18

## STATUTES

Cal. Labor Code Section 203 ...................................................................... 17

Cal. Labor Code Section 2699 .................................................................... 19

Federal Rule of Civil Procedure 23 ................................................................... passim

## TREATISES

Manual for Complex Litigation (Fourth) (2004) ........................................................ 6,7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Plaintiff and defendants have reached a settlement of $125,000.00 of the class and PAGA claims subject to approval by this Court. Defendants have agreed to pay the total sum provided for by the provisions of the Agreement, more fully described below and in the Agreement attached as exhibit 1. (See, Exhibit 1 to Harris Declaration).

Plaintiff and her counsel believe the Settlement is fair and reasonable, providing class members' similar if not superior remedies than they could otherwise have expected to receive if the case had been successfully tried, but without the delay and risks associated with trial.

Plaintiff respectfully requests that this Court review the Agreement, attached as Exhibit 1 to the Harris Declaration, and enter an order: (1) granting preliminary approval of the Settlement; (2); certifying a class for settlement purposes and appointing Plaintiff as class representative and Plaintiff's counsel as class counsel; (3) approving the parties' proposed form and method of giving class members notice of the action and proposed Settlement; (4) directing that notice be given to class members in the proposed form and manner; and (5) setting a hearing on whether the Court should grant final approval of the Settlement, enter judgment, award attorneys' fees and expenses to Plaintiff's counsel, and grant incentive awards to Plaintiff.

## II.

## FACTS AND PROCEDURE

This lawsuit was filed April 30, 2020, in Los Angeles County Superior Court. The action was removed in July of 2020, to the United States District Court for the Central District. After filing its answer, defendant filed a motion to transfer the action to this district, in September of 2020. After the parties filed opposition and

1

reply papers, the district court, in November of 2020, ordered that this action be transferred to the Eastern District. (Dkt. ## 1, 8, 11-12, 14, 20-21.)

The court filed its initial scheduling order in November of 2020, and an amended scheduling order on December 21, 2020. (Dkt. ## 22, 24-25). The court initially scheduled a discovery cut-off of August 2, 2021, expert disclosures in October of 2021, and a class certification motion deadline of December 1, 2021. (Dkt. # 25.) On June 24, 2021, the court entered an order granting the parties' stipulation to extend the discovery cut off dates and to extend the class certification motion deadline. The filing deadline was moved to March 1, 2022. (*Id.* # 31.)

The parties conducted a mediation of this matter before David Phillips, Esq., in June of 2021. The parties fully executed a Memorandum of Understanding in July of 2021. Thereafter, the parties negotiated a formal Class Action Settlement Agreement and Class Notice. The Agreement was ultimately entered into by all parties in December of 2021.  (Harris Declaration, ¶ 4, and exhibits 1-2 to Harris Declaration.)

Plaintiff filed a formal notice of settlement on December 6, 2021, and the court thereafter ordered that Plaintiff file a first amended complaint and motion for preliminary approval by March 7, 2022. Plaintiff filed the first amended complaint in January of 2022, and Defendants filed an answer to the first amended complaint in February of 2022. (Dkt. ## 32-39.)

## A.    The Class Action Complaint

This is a wage and hour class and representative action filed by Plaintiff, on behalf of non-exempt care givers employed by Defendants during the time period embraced by the lawsuit. The three care centers where the wage and hour violations are alleged to have occurred are:  (1) Empire Ranch Alzheimer's Special Care Center, located in Folsom, California;  (2) Willow Springs Alzheimer's Special Care Center located in  Redding, California; and (3) Blossom Grove Alzheimer's Special

Care Center  located in Redlands, California. (First Amended Complaint, Dkt. # 36, "FAC", ¶¶ 17-18; Harris Declaration, ¶ 5.)

Plaintiff asserts that Defendants require Class Members to remain on site and in possession of their communication devices during their breaks, thus representing an unlawful denial of rest and meal breaks. Moreover, the communication devices which Defendants furnished (which Plaintiff and Class members were to monitor at all times) functioned on site and not outside of the premises. Thus, as a practical matter, Plaintiff and Class Members could not leave the premises since their communication devices did not function outside the premises. (FAC, ¶¶ 7-8.)

Plaintiff claims that she and the putative class members are entitled to one hours' wages for each break violation, and related relief, based on such derelictions. The Private Attorney General Act claim seeks penalties based on the same derelictions, as well as Defendants' time rounding policies. (FAC, ¶¶ 25-27, 57-68.)

The initial class action complaint contained the following six causes of action: Failure to provide meal periods, failure to provide rest periods, waiting time penalties, failure to provide itemized wage statements, unfair competition, and violations of the Private Attorneys General Act ("PAGA"). The defendants originally named were JEA Senior Living Health & Welfare Benefit Plan, LLC, Willow Springs Management CA, LLC, Blossom Grove, LLC, and Empire Ranch Alzheimer's Special Care Center. (Dkt. # 1, complaint.)

The first amended complaint contains the same legal theories. However, the first amended complaint names the following defendants:  Willow Springs Management CA, LLC, a Delaware Limited Liability Company, California HCJ EE Group, LLC, California Senior Living EE Group, LLC,  and Folsom Investors, L.P. dba, Empire Ranch Alzheimer's Special Care Center. These entities operated the facilities located at Willow Springs Alzheimer's Special Care Center (California HCJ EE Group LLC, by way of a contract with JEA Senior Living), Blossom Grove

Alzheimer's Special Care Center (California HCJ EE Group LLC, pursuant to a contract with JEA Senior Living), and Empire Ranch Alzheimer's Special Care Center (California Senior Living EE Group LLC, by way of a contract with JEA Senior Living). They also employed the members of the putative class. (Harris Declaration, ¶ 5; FAC, ¶¶ 17-19.)

Frontier Management, LLC (an entity unrelated to defendants) took over management of the facilities as follows:  Willow Springs on or around October 2, 2020, Blossom Grove on or around September 1, 2020, and Empire Ranch on or around July, 2021. (Harris Declaration, ¶ 6.)

**B.    Investigation And Discovery**

Plaintiff conducted a pre-filing and post-filing investigation, including, but not limited to, serving written discovery, reviewing Defendants' responses and supplemental responses, reviewing approximately 400 documents produced by Defendants, and interviews of class members.  The documents produced included the policies of the facilities as well as the underlying agreements relating to operation thereof and who employed class members. Plaintiff's personnel file was also reviewed. (Harris Declaration, ¶ 7.)

**C.    Mediation**

The parties participated in a mediation before respected mediator David Phillips in June of 2021, and during the mediation further discussed the litigation and the underlying factual background, before agreeing to the terms of an MOU. (*Id.*)

**D.    The Settlement Agreement**

The Agreement is attached to the Harris Declaration as exhibit 1.

**E.    The Proposed Settlement**

**1.    The Proposed Settlement Class**

The settlement class consists of "All current or former nonexempt caregivers

working at the Willow Springs Facility, the Empire Ranch Facility, and/or the Blossom Grove Facility at any time between April 30, 2016, through September 2, 2021." ("Settlement Class"). (Agreement, ¶ 1.4.)

**2.    The Proposed Payments**

The gross settlement payment is $125,000.00. (*Id.* ¶ 1.19.) The individual settlement payments are calculated by dividing the number of eligible work weeks worked by each class member against the total number of work weeks.[1] (*Id.* ¶ 5.1.1.)

The PAGA payment is $5,000.00, with 75% of this sum payable to the LWDA. The period of time covered by the PAGA payment is April 30, 2019, through September 2, 2021. (*Id.* ¶¶ 1.28-1.29.)

**3.    The Proposed Notice to the Class and Others of the Settlement**

A Settlement Administrator is to be appointed under the Agreement who will disseminate notice of the Settlement and the hearing on a Final Approval Motion (see, Exhibit 2 of the Harris Declaration; Agreement ¶¶ 3.1, 4.1 to 4.3). Notice will be sent by First-Class U.S. Mail, postage paid, to potential Settlement Class members. (*Id.*)

Class members will have 45 days to object or exclude themselves from the Settlement. (*Id.* ¶¶ 4.1-4.3.)

**4.    The Proposed Release of the Class**

Class Members who do not opt out of the Settlement according to the procedures set forth in the Settlement Agreement shall release any and all claims (including unknown claims) or causes of action that were, or could have been, asserted by Plaintiff or any Class Members against defendants and the parties named

---

[1] The number of work weeks is currently estimated to be 13,863. (Harris Declaration, ¶ 8.)

in the release, including without limitation, claims for violation of the California Labor Code, the Business & Professions Code (including Section 17200, et seq.), any IWC Wage Order; claims for restitution and other equitable relief, interest, wages, off-the-clock time, meal and rest period penalties, waiting time penalties, penalties for inaccurate wage statements, and penalties pursuant to the Private Attorneys General Act ("PAGA"). (Agreement, ¶ 6.)

### 5.    Attorneys' Fees, Costs and Enhancements

The Agreement contains provisions relating to class counsel's attorneys' fees and costs, administrative costs, as well as the recommended enhancement payment. (*Id.*, ¶¶ 5.1-5.3.)

### III.

### ARGUMENT

**A.    The Proposed Class Action Settlement Should Receive Preliminary Approval**

**1.    Overview of the Class Action Settlement Process and the Role of Preliminary Approval**

A class action settlement like the one proposed here must be approved by the Court to be effective. *See* Fed. R. Civ. Proc. 23(e). Court approval occurs in three steps: (1) a preliminary approval hearing, at which the court considers whether the proposed settlement is within the range of reasonableness meriting final approval; (2) a notice and comment stage, during which class members are informed about the proposed settlement and given an opportunity to object; and (3) a "formal fairness hearing," or final approval hearing, at which the court decides whether the proposed settlement should be approved as fair, adequate, and reasonable to the class. *See* Manual for Complex Litigation (Fourth) §§ 21.632-34 (2004).

Plaintiff asks the Court to take the first step in the settlement approval process and grant preliminary approval of the Settlement. Plaintiff further requests that the

1  Court provisionally certify the Settlement Class, appoint Plaintiff as Class
2  Representative and her attorneys as Class Counsel, order dissemination of notice to
3  Class Members, and set a date for the final approval hearing.

4  **B.    Conditional Class Certification Is Appropriate for Settlement Purposes**

5  **1.    The Proposed Class Meets the Requirements of Rule 23**

6  Before granting preliminary approval of the Settlement, the Court should
7  determine that the proposed settlement class meets the requirements of Rule 23.
8  The plaintiff bears the burden of showing by a preponderance of the evidence that
9  class certification is appropriate under Federal Rule of Civil Procedure 23. *Wal-*
10 *Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011); *See Amchem Prods. v.*
11 *Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation, § 21.632.  An
12 analysis of the requirements of Rule 23(a) and 23(b)(3), commonly referred to as
13 numerosity, commonality, typicality, adequacy, predominance, and superiority,
14 shows that certification of this proposed settlement class is appropriate.

15 "The criteria for class certification are applied differently in litigation classes
16 and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556
17 (9th Cir. 2019). When deciding whether to certify a litigation class, a district court
18 must consider manageability at trial. *Id*. However, this concern is not present in
19 certifying a settlement class. *Id*. at 556–57. In deciding whether to certify a
20 settlement class, a district court "must give heightened attention to the definition of
21 the class or subclasses." *Id*. at 557 (citation omitted).

22 **2.    The Proposed Class Is Sufficiently Numerous and Ascertainable**

23 The numerosity requirement is met where "the class is so numerous that
24 joinder of all members is impracticable."  Fed. R. Civ. P. 23(a) (1).  Generally,
25 courts will find a class sufficiently numerous if it consists of 40 or more members.
26 *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009)
27 (numerosity is presumed at a level of 40 members); *Ikonen v. Hartz Mountain*
28

7

1 *Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1998) (finding a purported class of 40
2 members sufficient to satisfy numerosity).

3    Here, the proposed settlement class consists of 498 putative class members,
4 with 323 of the class members being former employees. (Harris Declaration, ¶ 8.)
5 Further, the existence of an ascertainable class can be established through
6 Defendants' payroll records, and the class definition is sufficiently specific for the
7 parameters of the class to be determined.  Accordingly, the class is both sufficiently
8 numerous and ascertainable. (*Id.*)

9    **3.    There are Questions of Law and Fact that Are Common to the**
10       **Class**

11    Rule 23(a)(2) requires that "there are questions of law or fact common to the
12 class." The "commonality requirement has been 'construed permissively,' and its
13 requirements deemed minimal." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-
14 1020 (9th Cir. 1998). A question is sufficiently common where "it is capable of
15 class wide resolution — which means that determination of its truth or falsity will
16 resolve an issue that is central to the validity of each one of the claims in one
17 stroke." *Dukes*, 564 U.S at 350. Commonality exists where "the circumstances of
18 each particular class member vary but retain a common core of factual or legal
19 issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th
20 Cir. 2008). "What matters to class certification ... is not the raising of common
21 'questions' — even in droves — but rather the capacity of a class wide proceeding
22 to generate common answers apt to drive the resolution of the litigation." *Dukes*,
23 564 U.S at 350. Even a single common question is sufficient to meet this
24 requirement. *Id*. at 359.

25    Common questions of law and fact in this action include whether Defendants
26 had a policy and practice of failing to pay employees for all missed meal periods
27 and rest breaks, whether class members' were required to take rest and meal breaks

28

1    on site and in possession of a communication device, whether Defendants provided

2    complete and accurate wage statements, and whether Defendants failed to pay all

3    wages owed to class members. See, e.g., FAC ¶ 32 b. Accordingly, the commonality

4    requirement is met.

5          **4.**     **Plaintiff's Claims are Typical of the Proposed Settlement Class**

6          Rule 23(a)(3) requires that "the claims or defenses of the representative

7    parties are typical of the claims or defenses of the class." "The test of typicality is

8    whether other members have the same or similar injury, whether the action is based

9    on conduct which is not unique to the named plaintiffs, and whether other class

10    members have been injured by the same course of conduct." *Hanon v. Dataproducts*

11    *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted); *Rodriguez v. Hayes*,

12    591 F.3d 1105, 1124 (9th Cir. 2010); *Lozano v. AT&T Wireless Services, Inc.*, 504

13    F.3d 718, 734 (9th Cir. 2007). Under the "permissive standards" of Rule 23(a)(3),

14    the claims "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d

15    1011, 1020 (9th Cir. 1998) (quotation omitted); *Armstrong v. Davis*, 275 F.3d 849,

16    868 (9th Cir. 2001).

17          Plaintiff's claims are both factually and legally similar to those of the putative

18    class because Defendants allegedly failed to provide Plaintiff and all class members

19    meal breaks and rest periods, complete and accurate wage statements, and because

20    Defendants allegedly failed to pay Plaintiff and all class members all wages owed.

21    (FAC ¶¶ 5-15; Plaintiff's declaration, ¶¶ 1-5.) Plaintiff does not allege any

22    individual claims. Thus, the typicality requirement is satisfied here. (See, FAC, ¶ 32

23    c.)

24          **5.**     **Plaintiff and Plaintiff's Counsel Will Adequately Represent the**

25                **Interests of the Proposed Settlement Class**

26          The final Rule 23(a) requirement asks whether "the representative parties will

27    fairly and adequately protect the interests of the class." Fed. Civ. P. 23(a) (4).

28

1  This requirement is satisfied if: (1) the proposed representative Plaintiffs do not

2  have conflicts of interest with the proposed class, and (2) Plaintiffs are represented

3  by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020; *In re Mego Fin.*

4  *Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).

5      Here, the proposed representative Plaintiff does not have individual interests

6  in this litigation that conflict with the best interests of the class. In addition, the

7  named Plaintiff is represented by counsel well versed in prosecuting wage and hour

8  class actions, and other class actions. (Palacio Declaration,  ¶¶ 1-10; Harris

9  Declaration, ¶ 20; Benowitz Declaration, ¶¶ 4-11.)

10     **6.    Common Issues Predominate Over Individual Issues**

11     "In addition to meeting the conditions imposed by Rule 23(a), the parties

12  seeking class certification must also show that the action is maintainable under Fed.

13  R. Civ. P. 23(b) (1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, the proposed class

14  is maintainable under Rule 23(b) (3), as common questions predominate over any

15  questions affecting only individual members and class resolution is superior to other

16  available methods for a fair resolution of the controversy.  *Id*. (citing Fed. R. Civ. P.

17  23(b) (3)).

18     Here, common questions raised by Plaintiff's claims predominate over

19  questions affecting only individual members of the proposed class. Plaintiff alleges

20  that Defendants had a policy of requiring breaks by class members to be on site and

21  in possession of a communication device, thus routinely denying class members rest

22  and meal breaks, failed to provide complete and accurate wage statements, and

23  failed to reimburse employees all wages owed to them. (FAC, ¶¶ 5-15.) Plaintiff

24  alleges Defendants' wage and hour policies were uniform and violated California

25  law, thus establishing that the predominance requirement is met for purposes of

26  provisional class certification. (*Id.*)

27

28

**7.      Class Settlement Is Superior to Other Available Means of Resolution**

Similarly, there can be little doubt that resolving all Class Members' claims through a single class action is superior to a series of individual lawsuits. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023; Fed. R. Civ. P. 23(b)(3). Indeed, the terms of the Settlement negotiated on behalf of the class demonstrates the advantages of a collective bargaining and resolution process.

A class action enables the most efficient use of Court and attorney resources and reduces costs to the class members by allocating costs among them. Further, this forum is appropriate, and there are no obvious difficulties in managing this class action.

**C.    Preliminary Settlement Approval**

Federal Rule of Civil Procedure 23(e) requires district courts to review proposed class action settlements for fairness, reasonableness, and adequacy. *Roes v. SFBSC Mgmt.*, 944 F.3d 1035, 1048 (9th Cir. 2019); *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).

Where class counsel seeks approval of a settlement agreement before …"the class is even certified, courts '"must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."' *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir.2011). In such a case, settlement approval '"requires a higher standard of fairness"' and '"a

1  more probing inquiry than may normally be required under Rule 23(e)."' *Hanlon*,

2  150 F.3d at 1026; *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012);

3  *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting

4  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011)).

5      Courts may preliminarily approve a settlement and notice plan to the class if

6  the proposed settlement: (1) appears to be the product of serious, informed, non-

7  collusive negotiations; (2) does not grant improper preferential treatment to class

8  representatives or other segments of the class; (3) falls within the range of possible

9  approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-

10 MD-02624-HSG, 2018 WL 6099948, at *11 (N.D. Cal. Nov. 21, 2018) (citation

11 omitted).[2]

12      **D**. **Analysis**

13      **1.    Evidence of Conflicts and Signs of Collusion**

14      The first factor the Court considers is whether there is evidence of collusion

15 or other conflicts of interest. See *In re Bluetooth Headset Prods. Liab. Litig.*, supra,

16 654 F.3d 935, 947.  The Ninth Circuit has directed district courts to look for "subtle

17 signs of collusion," which include whether counsel will receive a disproportionate

18 distribution of the settlement, whether the parties negotiate a " 'clear sailing'

19 arrangement (i.e., an arrangement where defendant will not object to a certain fee

20 request by class counsel)," and whether the parties agree to a reverter that returns

21 unclaimed funds to the defendant. *Id*.

22      As discussed above, the proposed settlement is non-reversionary with all

23 unclaimed funds redistributed among class members or paid to the State Controller's

24 office. (Agreement, ¶¶ 5.5.1-5.5.2; 5.6.2.) See, also, *Roe v. Jose Torres L.D. Latin*

25

26 ─────────────

27 [2] Accord. *Singh v. Roadrunner Intermodal Services, LLC* (E.D. Cal., May 29, 2018)
   No. 115CV01497DADBAM, 2018 WL 2412325, at *3, modified (E.D. Cal., Sept.
28 13, 2018) No. 115CV01497DADBAM, 2018 WL 4382202.

1  *Club Bar, Inc.*, No. 19-CV-06088-LB, 2020 WL 5074392, at *10 (N.D. Cal. Aug.

2  27, 2020) (granting final approval of settlement requiring "[p]ayments for the

3  settlement class members for whom the settlement administrator lacks mailing

4  addresses and/or whose notice settlement administrator deemed undeliverable shall

5  be submitted ... to the California State Controller's Office").[3]

6          **a. Clear Sailing Provision**

7          The settlement does contain a clear sailing provision. (Agreement, ¶ 5.2.)

8  When "confronted with a clear sailing provision, the district court has a heightened

9  duty to… scrutinize closely the relationship between attorneys' fees and benefit to

10  the class, being careful to avoid awarding unreasonably high fees simply because

11  they are uncontested." *Roes v. SFBSC Mgmt.*, 944 F.3d 1035, 1051 (9th Cir. 2019),

12  (quoting Staton, 327 F.3d at 954.)

13          Here, counsel will request fees up to $41,666.00 and costs up to $12,500.

14  (Agreement ¶ 5.2.) When deciding to award attorney's fees and costs, the Court has

15  discretion in a common fund case to choose either (1) the lodestar method or (2) the

16  percentage-of-the-fund. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir.

17  2002). Under the percentage-of-recovery method, twenty-five percent of a common

18  fund is the benchmark for attorneys' fees award. See, e.g., *In re Bluetooth*, 654 F.3d

19  at 942. However, common fund awards are frequently awarded in excess of this

20  figure. *Singh v. Roadrunner Intermodal Services, LLC*, supra, 2018 WL 2412325, at

21  *5.

22          Class Counsel asserts have spent over 100 hours litigating this action and

23  their lodestar incurred to date is $94,125. (Harris Declaration, ¶¶ 18-19; Benowitz

24  Declaration, ¶12-13.) We estimate that we will spend 50 more hours through final

25

26  _____

27  [3] Participation in mediation (as was done here) tends to support that the settlement is
    not collusive. *Singh v. Roadrunner Intermodal Services, LLC*, supra, 2018 WL

28  2412325, at *4.

approval and settlement administration. (Harris Declaration, ¶ 18.) Counsel thus asserts the requested maximum sum of $41,666.00 represents significantly less than the lodestar amount to date, even when excluding the value of any future work to be performed.

Class counsel has also incurred costs of $10,333.50, with the maximum cost award capped at $12,500. (Agreement, ¶ 5.2; Harris Declaration, ¶ 18; Benowitz Declaration, ¶ 13.)

Counsel obtained a result for the class members, assuming a substantial risk in litigating this action on a contingency fee basis, while incurring costs without the guarantee of payment for its litigation efforts. Further, the agreement does not contemplate a disproportionate cash allocation between counsel and the class, particularly when considering that the value of counsel's lodestar far exceeds the value of the fee award. Accordingly, given that counsel will not receive a disproportionate amount of the settlement agreement, and since the settlement is non-reversionary, the clear sailing provision does not weigh against preliminary approval.

### b. Preferential Treatment

The Agreement does not provide preferential treatment to any class member. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947.

Here, the Agreement authorizes payment from the Gross Settlement Fund of up to $3,000 to Plaintiff for her service as a Class Representative. (Agreement ¶ 5.3.) Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Plaintiffs must provide sufficient evidence to allow the Court to evaluate

Plaintiffs' award "individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, ... [and] the amount of time and effort the plaintiff expended in pursuing the litigation ....' " *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (citation omitted).[4] Since, incentive awards are not per se unreasonable, the award weighs in favor of preliminary approval. See *Rodriguez*, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary" (emphasis omitted)); *Singh v. Roadrunner Intermodal Services, LLC*, supra, 2018 WL 2412325, at \*6 (incentive awards of $7,500 have been approved by courts).

**2. Settlement within Range of Possible Approval**

The next factor the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at \*8; *Singh v. Roadrunner Intermodal Services, LLC*, supra, 2018 WL 2412325, at \*6. This requires the Court to evaluate the strength of Plaintiff's case.

Here, the named Defendants no longer operate the residential care facilities, thus negating any claim of ongoing violations. Their lack of any ongoing interest in the facilities also raises the issue of potential collectability problems arising if Plaintiff did obtain a judgment in favor of the class. (Harris Declaration, ¶¶ 5-6, 10.)

Moreover, the Defendants produced their policy manuals, and these manuals are facially compliant, including meal and rest break policies. However, the policies do not address whether employees are free to leave the premises during their rest breaks, and whether or not communication devices must at all times be in the

---

[4] We have filed a declaration of the named Plaintiff (in support of preliminary approval) addressing these factors.

possession of class members. (Harris Declaration, ¶ 11.)

### a. Legal Issues Regarding Rest Breaks

Regarding rest breaks, multiple cases find that a requirement of on premises rest breaks establishes that the rest breaks are invalid. *Augustus v. ABM Security Services, Inc.*, 2 Cal.5th 257, 270 (2016); *Ritenour v. Carrington Mortgage Services, LLC,* No. SACV1602011CJCDFMX, 2018 WL 5858658, at *7(C.D. Cal., Sept. 12, 2018); *Hubbs v. Big Lots Stores, Inc.*, No. LACV1501601JAKASX, 2018 WL 5264141, at *4–5(C.D. Cal., Mar. 16, 2018). The DLSE has also revised the Frequently Asked Questions on its web site, stating the following:

> **5. Q. Can my employer require that I stay on the work premises during my rest period?**
> **A.** No, your employer cannot impose any restraints not inherent in the rest period requirement itself. In Augustus v. ABM Security Services, Inc., (2016) 5 Cal.5th 257, 269, the California Supreme Court held that the rest period requirement "obligates employers to permit-and authorizes employees to take-off-duty rest periods. That is, during rest periods employers must relieve employees of all duties and relinquish control over how employees spend their time." (citation omitted) As a practical matter, however, if an employee is provided a ten minute rest period, the employee can only travel five minutes from a work post before heading back to return in time. https://www.dir.ca.gov/dlse/FAQ_RestPeriods.htm (accessed 5/28/2019).

Thus, whether Defendants' policies require rest periods on site, and whether communication devices must be maintained at all times by class members, remain at issue. However, these issues also potentially could be individual rather than class wide, given the existence of the three different facilities, that the facilities are not all operated by the same entities, and the potential for individual variance among employees. (Harris Declaration, ¶ 11.)

### b. Potential Damages

One damage model based on meal and rest break violations (the primary violation at issue) involves multiplying the total number of work weeks (here

13,863) by the average hourly rate of class members (Plaintiff was paid $12.00 an hour) and assuming three violations a week. In those circumstances, the total class damages, based on missed breaks, are $499,068.00.[5] (Harris Declaration, ¶ 13.)

We have been unable to substantiate in our investigation that hours were rounded such that class members were denied wages. (*Id.*, ¶ 14.) Also, presently, it is unclear whether waiting time penalties and wage statement violations can be recovered for meal and rest period violations since the California Supreme Court has granted review of *Naranjo v. Spectrum Security Services, Inc.,* 40 Cal.App.5th 444, 474 (2019) (holding that such relief is unavailable). If the penalty under Labor Code Section 203 is available, however, the potential relief in this case would dramatically expand since the Section 203 penalty would be worth approximately $930,000. (This is based on 30 days wages payable to 323 former employees, at the rate of $12.00 an hour.[6]) (Harris Declaration, ¶ 15.)

Thus, based on the potential recovery for meal and rest break violations, the gross settlement amount is approximately 25% of the available damages.  (Harris Declaration, ¶ 13.)

Regarding the PAGA claim, we estimate that the total value (under the assumptions made) is approximately $160,600.00, but the award could be far less based on the manner in which other courts arrived at PAGA penalty awards. The resolution of this claim is reasonable since it is based on a settlement where liability is disputed and is a reasonable percentage of the total settlement amount. (Harris

--------

[5] Since the policy manuals produced permit class members to leave the premises for meal periods, our analysis assumes the violations are all rest period violations. (Harris Declaration, ¶ 13.)

[6] However, since Frontier Management has taken over the operations of the facilities, the number of former employees could reasonably equate to the number of the putative class, which is 498. In those circumstances, the value of the statutory penalty of 30 days wages would be $1,434,240. (Harris Declaration, ¶ 15.)

Declaration, ¶¶ 16-17.)

### c. Gross Settlement In Light of Potential Recovery

Based on the potential recovery estimates we have provided, the Gross Settlement amount of $125,000 represents approximately one-fourth of Defendants potential statutory damage exposure. But there are substantial risks of further litigation given the complex issues that could defeat class certification, the need to receive a favorable verdict capable of withstanding a potential appeal, and whether a judgment can be collected now that Defendants are no longer the employers of class members. (Harris Declaration, ¶¶ 10-17, 21.) Plaintiff contends that these risks weigh in favor of granting preliminary approval. See *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *8 (N.D. Cal. Apr. 1, 2011) ("[D]istrict courts have found that settlements for substantially less than the plaintiffs' claimed damages were fair and reasonable, especially when taking into account the uncertainties involved with litigation."); *Singh v. Roadrunner Intermodal Services, LLC,* supra, 2018 WL 2412325, at *6 (same).

### 3. Obvious Deficiencies

Plaintiff asserts that there are no obvious deficiencies in the settlement agreement, and therefore contends that this factor weighs in favor of preliminary approval. The settlement terms, non-reversionary provision, notice provisions, and the terms permitting class members to object or exclude themselves, as well as the release of liability, do not contain any obvious deficiencies. See, *Singh v. Roadrunner Intermodal Services, LLC,* supra, 2018 WL 2412325, at *4.

### E.     The Proposed Notice Plan Meets the Requirements of Rule 23

Upon certifying a 23(b)(3) class, Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  In addition, Rule 23(e) (1) requires that before a proposed settlement may

1  be approved, the Court "must direct notice in a reasonable manner to all class
2  members who would be bound by the proposal."

3       The parties have agreed on a notice plan that satisfies the requirements of
4  Rule 23. Under this plan, Defendants will cause to be mailed notice of class
5  certification and the proposed settlement to all members of the Settlement Class.
6  The form of the notice to be mailed, attached as Exhibit 2 to the Harris Declaration,
7  includes all the content required by Rule 23(c) (2) (B), such as a description of the
8  action and class claims, as well as the Class Members' right to opt out or object to
9  the proposed settlement, including any application for attorneys' fees, costs and
10  service awards.

11  **F.**    **The PAGA Payment Should Be Approved**

12       The court must review and approve any civil penalties sought as part of a
13  proposed settlement agreement pursuant to PAGA. (Cal. Lab. Code § 2699 (1).) The
14  court has discretion to award a lesser amount than the maximum civil penalty
15  allowed under PAGA. (Cal. Lab. Code § 2699(e) (2).) The PAGA allocation here is
16  reasonable since it is based on a settlement where liability is disputed and is a
17  reasonable percentage of the total settlement amount.  (Harris Declaration, ¶ 17.)

18  **IV.CONCLUSION**

19
20       The Parties have negotiated a fair and reasonable settlement that almost
21  certainly never would have been arrived at but for the use of a class action as a
22  procedural device, a dedicated and informed Class Representative and experienced
23  Plaintiff's counsel. Preliminary Approval should thus be granted.
24
25
26
27
28

1

2   DATED: March 7, 2022                    THE LAW OFFICES OF STEPHEN M.
                                            HARRIS, P.C.
3

4

5                                           By:      /s/ Stephen M. Harris
6                                                Stephen M. Harris
                                                Attorneys for Plaintiff ANNICA BOWEN
7                                                A.K.A. ANNICA PALACIO

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PRELIMINARY APPROVAL MOTION