1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ANNICA B. BOWEN, on behalf of herself        No.  2:20–cv–2318–KJN
     and all others similarly situated,
12                                                 PRELIMINARY APPROVAL OF CLASS
                       Plaintiffs,                 ACTION AND PAGA SETTLEMENT
13
                 v.                                (ECF No. 40.)
14
     JEA SENIOR LIVING HEALTH AND
15   WELFARE BENEFIT PLAN, LLC, et al.,

16                     Defendants.

17

18          Presently pending before the court is plaintiff's (Annica Bowen, a.k.a. Annica Palacio)

19   unopposed motion for provisional certification of a settlement class and preliminary approval of a

20   Rule 23 Class Action and California Private Attorneys General Act ("PAGA") settlement in this

21   meal- and rest-break labor dispute.[1]  (ECF Nos. 40, 43.)

22          For the following reasons, the court GRANTS provisional certification of the settlement

23   class, APPOINTS plaintiff as class representative and plaintiff's counsel as class counsel,

24   GRANTS preliminary approval of the class action and PAGA settlement, APPROVES the class

25   notice—after small modifications are made, and SETS further deadlines.

26

27   _____
     [1] The assigned district judge took the motion under submission without a hearing.  (ECF No. 44.)
     Thereafter, the parties consented to the jurisdiction of a magistrate judge for all purposes, 28
28   U.S.C. § 636(a), and the case was reassigned to the undersigned.  (See ECF Nos. 48, 49, 51.)

                                                 1

1    **I.**      **BACKGROUND**

2        **A.   Factual and Procedural History**

3            Plaintiff alleges in the First Amended Complaint ("1AC") that she previously worked as a

4    non-exempt hourly-wage employee for defendants Empire Ranch, Willow Springs, and Blossom

5    Grove, who jointly ran Alzheimer care centers in Northern California.  (ECF No. 36 at ¶¶ 16-21.)

6    Plaintiff alleges that from at least 2016 through 2021, defendants enforced policies and practices

7    that did not allow for her and other caregivers to:  (i) take meal breaks despite working 5+ hours a

8    day; (ii) take rest breaks for every four hours worked; (iii) receive itemized wage statements; and

9    (iv) receive all wages owed at the conclusion of their employment.  (Id. at ¶¶ 6-7; see also Harris

10   decl., ECF No. 40-1 at ¶ 6 (noting the approximate date another company took over management

11   of the facilities).)  Plaintiff alleges, in essence, that defendants deprived her and other caregivers

12   of breaks by requiring them to remain on site and in possession of their localized communication

13   devices at all times.  (ECF No. 36 at ¶ 8.)

14           On April 30, 2020, plaintiff filed a putative class action in California Superior Court, Los

15   Angeles County, on behalf of herself and similarly situated current and former caregivers.  (See

16   ECF No. 1.)  Defendants removed to the U.S. District Court for the Central District of California

17   and answered the complaint; the case was transferred to the Eastern District in November of

18   2020.  (See id.)  After exchanging discovery responses, the parties participated in mediation in

19   June of 2021, executed a settlement agreement shortly thereafter, submitted a first amended

20   complaint in January of 2022, and moved for preliminary approval in March of 2022.  (ECF Nos.

21   36; 40; 40-1 at ¶ 4.)  The matter was taken under submission by the assigned district judge,

22   reassigned to a different district judge, and ultimately reassigned to the undersigned after the

23   parties consented to magistrate judge jurisdiction.  (ECF Nos. 44, 45, 48, 49, 51.)

24       **B.   Terms of the Proposed Settlement**

25           The Settlement Agreement contains a release of all claims that are factually supported by

26   the 1AC against defendants by the proposed class, who are defined as "[a]ll current or former

27   nonexempt caregivers working at the Willow Springs Facility, the Empire Ranch Facility, and/or

28   the Blossom Grove Facility at any time between April 30, 2016, through September 2, 2021."

(Settlement Agreement, ECF No. 40-2, at ¶ 1.4.)  The Agreement sets the PAGA period from April 20, 2019, to September 2, 2021.  (Id. at ¶ 1.27-1.29.)  The proposed class consists of approximately 498 class members, with 323 former employees and the remaining those who continued employment with the new management company beyond 2021.  (ECF No. 40-1 at ¶ 8.)

In return for the release of claims from these individuals, the Settlement Agreement provides for a non-reversionary gross settlement amount of $125,000.  (ECF No. 40-2 at ¶ 1.19.)  This amount represents approximately a quarter of the potential damages for alleged missed rest breaks (at just under $500,000), and approximately one-eighth to one-tenth of the potential maximum relief if additional penalties were to be found cognizable.  (ECF No. 40-1 at ¶ 13-15.)  The estimates are based on counsel's examination of discovery documents showing the number of breaks potentially at issue (13,863 work weeks) and the average hourly pay rate of class members (at $12/hour).  (Id. at ¶ 13.)  In arguing the settlement is fair, counsel notes the significant weaknesses in plaintiff's case, including that defendants' facial policy appears to allow caregivers to leave the premises during breaks, among other things.  (Id. at ¶¶ 10-17.)

The Settlement Agreement proposes deducting from the $125,000 gross settlement amount the following:

(a)  Class representative incentive award of $3,000;

(b)  Class counsel's attorney's fees of up to $41,666 (one-third of the gross amount);

(c)  Class counsel's litigation costs of up to $12,500;

(d)  Settlement administrator costs of up to $9,000; and

(e)  A PAGA payment of $3,750 to be paid to the Labor Workforce and Development Agency ("LWDA"), out of an overall PAGA award of $5,000.[2]

(ECF No. 40-2 at ¶¶ 5.1-5.4.)  The above deductions, if fully approved, would yield a Net Settlement Fund of $55,084.  (See id.)

///

---

[2]  As discussed below, PAGA requires that 75% of PAGA penalties recovered go to the LWDA and 25% to the aggrieved employees.  Cal. Lab. Code § 2699(i).  Accordingly, the Settlement Agreement directs the remaining $1,250 (25% of $5,000) into the Net Settlement Fund.  (Settlement Agreement at ¶ 5.4.)

As proposed, the Net Settlement Fund would be distributed across all class members who do not opt out of the settlement, on a pro-rata basis, as determined by the number of workweeks they worked as class members during the class period.  (Id. at ¶ 5.5.)  Using the parties' numbers, the proposed settlement would result in an average recovery of $110 per class member ($55,084 Net Settlement Fund / 498 class members, which of course will vary depending on the number of workweeks each class member actually worked).

The Settlement Agreement requires the Settlement Administrator to mail out notices of the class action settlement within 30 days of the court's preliminary approval.  (ECF No. 40-2 at ¶ 3.4.)  It then allows 45 days from the mailing of the proposed Notice of Class Action Settlement for class members to (a) do nothing and receive a payment, (b) request to be excluded from the settlement ("opt out"), (c) object to the terms of the settlement, or (d) dispute their dates of employment and estimated recovery amount listed.  (Id. at ¶ 4.1; ECF No. 40-3 at ¶ 6 (the Class Notice).)  Those who opt out will retain their right to sue but receive no payment under the settlement; those who remain in would ultimately receive their "Individual Settlement Payment" by check.  (ECF No. 40-2 at ¶¶ 1.20, 4.2; ECF No. 40-3 at ¶¶ 6(a) and (c).)  The Settlement Agreement also contains a procedure for distribution of the PAGA settlement should a class member opt out of the Rule 23 class settlement, and the Class Notice informs the class members that opting out of the Rule 23 class does not affect the PAGA settlement.  (ECF No. 40-2 at ¶ 5.6.2; ECF No. 40-3 at ¶ 6(c).)

**II.   <u>DISCUSSION</u>**

Plaintiff seeks:  (A) provisional certification of the Rule 23 settlement class, her appointment as class representative, and appointment of her counsel as class counsel; (B) preliminary approval of a class action settlement; (C) approval of the PAGA settlement; and (D) appointment of the settlement administrator, approval of the notice to class members, and setting of a fairness hearing.  (ECF No. 40.)  Defendants submitted a statement of non-opposition, given their participation in the 2021 mediation session.  (ECF No. 43.)

///

///

4

**Legal Standards – Rule 23 Class Settlements and PAGA Settlements**

When parties seek approval of a class settlement before class certification, courts must analyze "both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003); see Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."). Accordingly, the court considers whether the proposed class meets the certification requirements, and whether the proposed settlement is "fundamentally fair, adequate, and reasonable." Staton, 327 F.3d at 952. At the preliminary approval stage, the court considers the likelihood that it will ultimately approve the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). The final approval stage comes after notice to and feedback from the class and a fairness hearing. Fed. R. Civ. P. 23(e)(2).

Although this action largely consists of class claims, it also includes a claim for penalties under the California Labor Code's Private Attorneys General Act ("PAGA"). PAGA claims are distinct from class claims. See Kim v. Reins Int'l Cal., Inc., 9 Cal. 5th 73, 86-87 (2020) ("[A] representative action under PAGA is not a class action[,]" but rather one "on behalf of the government.") (quotations omitted). This is because "[p]laintiffs may bring a PAGA claim only as the state's designated proxy, suing on behalf of all affected employees." Id. (emphases original); see Viking River Cruises, Inc. v. Moriana, 142 S. Ct. 1906, 1914 (2022) (explaining how California law characterizes PAGA as creating a "type of qui tam action" with the representative private plaintiff acting in place of the government (quoting Iskanian v. CLS Transp. Los Angeles, LLC, 59 Cal. 4th 348, 382 (2014)). Because a PAGA claim is not "a collection of individual claims for relief" like a class action, Canela v. Costco Wholesale Corp., 971 F.3d 845, 855 (9th Cir. 2020) (discussing Kim's holding), PAGA claims "need not satisfy Rule 23 class certification requirements," Hamilton v. Wal-Mart Stores, Inc., 39 F.4th 575, 583 (9th Cir. 2022). However, like class action settlements, PAGA settlements must be approved by the court. Cal. Lab. Code § 2699(l)(2). Courts in this circuit apply "a Rule 23-like standard," asking whether the settlement of the PAGA claims is "fundamentally fair, reasonable, and adequate." Haralson v. U.S. Aviation Servs. Corp., 383 F. Supp. 3d 959, 972 (N.D. Cal. 2019).

5

**Analysis**

**A. Provisional Class Certification under Rule 23(a), (b)(3), and (g)**

Rule 23 establishes five prerequisites for any class certification:  (1) numerosity; (2) commonality; (3) typicality; (4) adequacy of representation; and (5) one of the three options under Rule 23(b).  See Fed. R. Civ. P. 23(a) and (b); Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2013).  Relevant here, Rule 23(b)(3) states that class action may be maintained only if "questions of law or fact common to class members predominate over any questions affecting only individual members" and if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  If the class is certified, the court must appoint class counsel and a class representative.  Fed. R. Civ. P. 23(e), (g).

To reiterate, plaintiff seeks provisional certification of a class defined as "[a]ll current or former nonexempt caregivers working at the Willow Springs Facility, the Empire Ranch Facility, and/or the Blossom Grove Facility at any time between April 30, 2016, through September 2, 2021."  (ECF No. 40-2 at ¶ 1.4.)

**1. Numerosity**

For class certification, the class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations."  Gen. Tel. Co. of Nw., Inc. v. EEOC, 446 U.S. 318, 330 (1980).  Courts have found the requirement satisfied when the class comprises as few as 39 members, where joining all class members would serve only to impose financial burdens and clog the court's docket.  See Murillo v. Pac. Gas & Elec. Co., 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citation omitted) (discussing Ninth Circuit guidance regarding numerosity and listing cases).

Plaintiff estimates there are approximately 498 members in the putative class.  (ECF No. 40-1 at ¶ 8.)  Maintaining this number of individual suits based on the same claims and facts would be impractical.  See, e.g., Jordan v. Cty. of Los Angeles, 669 F.2d 1311, 1319, n.10 (9th Cir. 1982) (noting that numerosity has been satisfied for class of fewer than 100 members) (vacated on other grounds).  Thus, plaintiff satisfies the numerosity requirement.

1

**2. Commonality**

2

Rule 23 class certification requires "questions of law or fact common to the class."  Fed.

3

R. Civ. P. 23(a)(2).  To satisfy commonality, the class representative must demonstrate the

4

litigation will "depend upon a common contention . . . capable of class-wide resolution—which

5

means that determination of its truth or falsity will resolve an issue that is central to the validity of

6

each one of the claims in one stroke."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

7

"So long as there is even a single common question, a would-be class can satisfy the commonality

8

requirement of Rule 23(a)(2)."  Wang v. Chinese Daily News, Inc., 737 F.3d 538, 544 (9th Cir.

9

2013) (quoting Wal–Mart, 564 U.S. at 350).

10

Here, plaintiff contends that common questions of fact and law exist based on whether

11

defendants:

12

13

14

> (i) had a policy and practice of failing to pay employees for all
> missed meal periods and rest breaks; (ii) required class members to
> take meal and rest breaks on site and in possession of a
> communications device; (iii) provided accurate wage statements;
> and (iv) failed to pay all wages owed to class members.

15

(ECF No. 40-2 at ¶ 2.1; see also ECF No. 36 at ¶ 32(b).)

16

Because the above questions would form the basis of each class member's claims,

17

plaintiff satisfies the commonality requirement.  See Jimenez v. Allstate Ins. Co., 765 F.3d 1161,

18

1165–66 (9th Cir. 2014) (finding commonality satisfied when class action claims raised common

19

question of whether the employer had practices or unofficial policies that violated California

20

Labor Code provisions).  "Even if individual members of the class will be entitled to different

21

amounts of damages because, for instance, they were denied fewer meal and rest breaks than

22

other employees, 'the presence of individual damages cannot, by itself, defeat class

23

certification.'"  Mejia v. Walgreen Co., 2020 WL 6887749, at *4 (E.D. Cal. Nov. 24, 2020)

24

(quoting Leyva, 716 F.3d at 513 and Wal-Mart, 564 U.S. at 362, and finding commonality

25

satisfied where the alleged labor code violations were based on the defendant's policies).

26

**3. Typicality**

27

Typicality is satisfied when "the claims or defenses of the representative parties are

28

typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality test asks

"whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  Sali v. Corona Reg'l Med. Ctr., 909 F.3d 996, 1006 (9th Cir. 2018) (quoting Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)).  The typicality requirement is a permissive standard.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998) ("[Class] representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.") (overruled on other grounds).

Here, plaintiff's claims are typical of the class because she was a non-exempt employee who allegedly was not compensated for involuntarily forfeited meal and rest breaks and received inaccurate pay stubs.  (ECF No. 36 at ¶ 32(c).)  Plaintiff's claims are reasonably co-extensive of the other class members, and so the typicality requirement is satisfied.  Hanlon, 150 F.3d at 1020.

### 4. Adequacy of Representation

To satisfy Rule 23(a)'s final requirement, the representative parties must show they will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  When analyzing the adequacy of the representation, the court must address two questions: "[a] do the named plaintiffs and their counsel have any conflicts of interest with other class members and [b] will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Hanlon, 150 F.3d at 1020 (citation omitted).  Certification will be denied in instances of "actual fraud, overreaching, or collusion."  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 948 (9th Cir. 2011) (emphasis in original).

### a. Conflicts of Interest

Based on the declarations, it does not appear that plaintiff or her counsel have any interests that conflict with the class other than the incentive award.  (ECF Nos. 40-4; 40-7).  See Staton, 327 F.3d at 975-76 (discussing the propriety of incentive awards).  Counsels' fee is discussed in Section B.3.c below.

As to plaintiff's incentive award, these are "fairly typical in class action cases," are meant to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their

1  willingness to act as a private attorney general." Rodriguez v. W. Publ'g Corp., 563 F.3d 948,

2  958-59 (9th Cir. 2009).  Nevertheless, courts "must be vigilant in scrutinizing all incentive awards

3  to determine whether they destroy the adequacy of the class representatives." Radcliffe v.

4  Experian Info. Solutions, Inc., 715 F.3d 1157, 1164 (9th Cir. 2013).  In assessing the

5  reasonableness of incentive awards, the court considers "the actions the plaintiff has taken to

6  protect the interests of the class, the degree to which the class has benefitted from those actions"

7  and "the amount of time and effort the plaintiff expended in pursuing the litigation." Staton, 327

8  F.3d at 977 (citation omitted).  The court must balance "the number of named plaintiffs receiving

9  incentive payments, the proportion of the payments relative to the settlement amount, and the size

10  of each payment." Id.

11      The Settlement Agreement proposes an incentive award up to $3,000 for the sole named

12  plaintiff in this action, Ms. Bowen (a.k.a. Ms. Palacio), which amounts to 2.4% of the gross

13  settlement amount of $125,000.  (ECF No. 40-2, ¶ 5.3.)  Percentagewise, such a class

14  representative award is higher than has been granted in other cases. See, e.g., Sandoval v.

15  Tharaldson Emp. Mgmt., Inc., 2010 WL 2486346, at *10 (C.D. Cal. June 15, 2010) (collecting

16  cases and concluding that incentive award over 1% of settlement fund, without justification, was

17  excessive); see also Ontiveros v. Zamora, 303 F.R.D. 356, 365 (E.D. Cal. 2014) (noting incentive

18  awards equaling even 1% of larger settlements are generally found to be "unusually high"); with

19  Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 267 (N.D. Cal. 2015) (citing cases

20  demonstrating that incentive awards typically range from $2,000 to $10,000).  Given that the

21  parties have not submitted exact figures of what each class member might obtain (instead relying

22  on a formula for the claims administrator to use in determining each class member's award), it is

23  difficult to determine how much larger of an award this would be in comparison to what each

24  class member might receive.  In plaintiff's favor, the court notes the significant time plaintiff

25  invested in participating in the case (as opposed to the absent class members).  This amount will

26  be considered at the final settlement step.  For purposes of provisional certification of the class,

27  the court does not find the proposed incentive award so disproportionate that it necessarily creates

28  a conflict of interest or renders plaintiff an inadequate representative.

1

**b.  Vigorous Prosecution**

2      As to the second aspect of the adequacy inquiry, plaintiff's attorneys at Stephen M. Harris,

3 P.C., and Smith & Benowitz have extensive experience in litigating complex class action cases,

4 including settling wage and hour class actions in California.  (ECF Nos. 40-1 at ¶ 20; 40-7 at ¶ 5.)

5 This experience suggests that counsel can effectively advocate for the proposed class.  In the

6 absence of any further evidence of conflicts, the court finds plaintiff's counsel likely to continue

7 vigorously prosecuting this lawsuit on behalf of the class.

8      **5.  Rule 23(b)(3) Requirements**

9      Plaintiff invokes Rule 23(b)(3), which requires a finding "that the questions of law or fact

10 common to class members predominate over any questions affecting only individual members,

11 and that a class action is superior to other available methods for fairly and efficiently adjudicating

12 the controversy."  Fed. R. Civ. P. 23(b)(3).  The test of Rule 23(b)(3) is "far more demanding"

13 than that of Rule 23(a).  <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591, 623-24 (1997)).

14 Predominance tests "whether proposed classes are sufficiently cohesive to warrant adjudication

15 by representation."  <u>Id.</u> at 623.  Superiority tests whether the class mechanism is better than other

16 available method, mainly by reducing litigation costs and promoting greater efficiency.  <u>Id.</u> at

17 620.  In a class action settlement, the court need not address whether the case, if tried, would

18 present issues of manageability under Rule 23(b)(3)(D).  <u>Id.</u> at 593.

19      Here, common questions of law and fact predominate over questions affecting individual

20 members because plaintiff and all class members allegedly were subject to the same policies and

21 practices regarding meal and rest breaks, timekeeping, and payment of wages upon termination.

22 When a class action challenges a defendant's uniform policies, courts generally find the

23 predominance requirement satisfied.  <u>See</u> <u>Vaquero v. Ashley Furniture Indus., Inc.</u>, 824 F.3d

24 1150, 1154-55 (9th Cir. 2016); <u>Palacios v. Penny Newman Grain, Inc.</u>, 2015 WL 4078135, at *6

25 (E.D. Cal. July 6, 2015) (finding predominance where defendants uniformly failed to properly

26 calculate wages and overtime, provide reimbursements, account for meal and rest periods, and

27 noting there will be individual issues apart from calculating individual damages).

28 ///

Because defendants' liability would turn on a review of its uniform policies and practices, concentrating litigation of the issues in one lawsuit would be superior to individual actions.  See Amchem, 521 U.S. at 620.  Further, when class members' individual recoveries might be less in separate suits, the class members' individual interests generally favor certification rather than individual prosecution.  Zinser v. Accufix Res. Inst., Inc., 253 F.3d 1180, 1190 (9th Cir. 2001); see Fed. R. Civ. P. 23(b)(3)(A) (one factor in superiority determination is class members' interests in bringing separate actions); Amchem, 521 U.S. at 617 (Rule 23(b)(3) serves to vindicate "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all"); see Fed. R. Civ. P. 23(b)(3)(B) (superiority determination also considers "extent and nature of any litigation concerning the controversy already begun by or against class members").[3]  Thus, common questions predominate, and a class action is a superior vehicle for adjudicating the dispute.

### 6.  Appointment of Class Representative & Class Counsel

In sum, because the court finds Rule 23(a)'s and Rule 23(b)(3)'s requirements are met, the class is provisionally certified for settlement purposes.  Additionally, the court provisionally appoints plaintiff Annica Bowen a.k.a. Annica Palacio as class representative.  Plaintiff's interests align with those of the unnamed class members, and (as discussed above) there do not appear to be any conflicts of interest sufficient to render her an inappropriate class representative.

"[A] court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). When appointing class counsel, a court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

///

---

[3]  The other two factors for superiority (desirability of concentrating litigation in this forum, and difficulty of managing the class action, Fed. R. Civ. P. 23(b)(3)(C) & (D)) do not apply when the action settles before class certification.  See Mejia, 2020 WL 6887749, at *6.

Plaintiff moves for an appointment of Stephen M. Harris of the Law Offices of Stephen M. Harris, P.C., and Louis Benowitz of Smith and Benowitz as Class Counsel.  Plaintiff states she has conferred with counsel throughout this litigation, which implicitly supports such a motion. (40-4 at ¶¶ 4-9.)  The court concludes that provisional designation of Stephen M. Harris and Louis Benowitz is appropriate.  As noted above, counsel are experienced in litigating class action cases, including wage and hour class actions, and they appear to have advanced plaintiff's position, investigated the claims thoroughly, and engaged in discovery prior to settlement.  (See, generally, ECF Nos. 40-1 and 40-7.)  Based on their previous efforts, the court anticipates counsel will continue to devote appropriate resources to represent the class.  For these reasons, the court provisionally designates plaintiff's counsel as class counsel.

## B. Preliminary Approval of Proposed Settlement

Settlement of a class action must be "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Preliminary approval is appropriate when "the court will likely be able to" give final approval.  Fed. R. Civ. P. 23(e)(1)(B).  Any fairness determination requires the court to "focus[ ] primarily upon whether the particular aspects of the decree that directly lend themselves to pursuit of self-interest by class counsel and certain members of the class—namely attorney's fees and the distribution of any relief, particularly monetary relief, among class members—strictly comport with substantive and procedural standards designed to protect the interests of class members."  Staton, 327 F.3d at 960.  Courts evaluate the "settlement as a whole, rather than assessing its individual components."  Lane v. Facebook, Inc., 696 F.3d 811, 818-19 (9th Cir. 2012).  Because the parties negotiated this settlement before any class was certified, the court applies a "more probing inquiry" to ensure the fairness of the proposed settlement.  Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035, 1048 (9th Cir. 2019) (quotations omitted).

In reviewing whether the proposed settlement is fair, reasonable, and accurate, Rule 23 requires the court to consider whether:  (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2).

For the following reasons, the Settlement Agreement appears fair, reasonable, and adequate, and so is preliminarily approved under Rule 23(e) as to the class claims.

### 1. Adequacy of Representation

The first factor, whether "the class representatives and class counsel have adequately represented the class," Fed. R. Civ. P. 23(e)(2)(A), is redundant of Rule 23(a)(4). Mejia, 2020 WL 6887749, at *9 (quotation omitted). The court preliminarily finds that the class representatives and class counsel adequately represent the class for purposes of Rule 23(e)(2)(A).

### 2. Arm's Length Negotiation

The second factor requires the court to consider whether the proposed settlement was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Here, the proposed settlement is the product of months of negotiations between the parties, including a mediation session before a neutral mediator in June of 2021, after the exchange of sufficient discovery. (ECF No. 40-1 at ¶ 4.) Thus, the court preliminary finds that this factor is satisfied. See Chambers v. Whirlpool Corp., 980 F.3d 645, 669 (9th Cir. 2020) ("The district court . . . correctly determined there was no collusion because," among other things, "the parties settled via arm's length negotiations before an experienced mediator."); Fraley v. Facebook, Inc., 966 F. Supp. 2d 939, 942 (N.D. Cal. 2013) (holding that a settlement reached after informed negotiations "is entitled to a degree of deference as the private consensual decision of the parties").

### 3. Adequacy of Relief Provided to the Class

The adequacy of relief determination requires consideration of four sub-factors:

> i.    the costs, risks, and delay of trial and appeal;
> ii.   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> iii.  the terms of any proposed award of attorney's fees, including timing of payment; and
> iv.   any agreement required to be identified under Rule 23(e)(3).

See Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv). The amount offered in the proposed settlement agreement is generally the most important consideration of any class settlement. See Bayat v. Bank of the West, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing In re HP Inkjet Printer Litig., 716 F.3d 1173, 1178–79 (9th Cir. 2013)).

      **i.   Costs, risks, and delay vs. settlement amount and scope of released claims**

In determining whether the amount offered is fair and reasonable, courts compare the proposed settlement to the best possible outcome for the class.  See Rodriguez, 563 F.3d at 964. Here, the parties agreed to settle this case for a non-reversionary sum of $125,000, inclusive of the PAGA payments.  (ECF No. 40-2 at ¶ 1.19.)  After deductions for an incentive award, attorneys' fees, litigation costs, settlement administrator fees, and the PAGA payment to the LWDA (assuming full approval for all), the court calculates a Net Settlement Fund of $55,084. (Id. at ¶¶ 5.1, 5.2, 5.3, 5.4.)  The proposed settlement roughly results in an average recovery of $110 per class member, but this of course will vary depending on the number of workweeks each class member actually worked, as each class member's award will be calculated as a proportional share of the net settlement amount.  (See id.)

This amount represents approximately a quarter of the potential damages for missed rest breaks (at just under $500,000), and approximately one-eighth to one-tenth of the potential maximum relief if full penalties were to be found cognizable.  (ECF No. 40-1 at ¶ 13-15.)  The estimates are based on counsel's examination of discovery showing the number of breaks potentially at issue (13,863 work weeks) and the average hourly pay rate of class members (at $12/hour).  (Id. at ¶ 13.)  However, the court concurs with counsel's analysis concerning the significant weaknesses in plaintiff's case, which includes not only the general uncertainties with litigating a case to trial, but specifically that defendants' facial policy appears to have been to allow caregivers to leave the premises during breaks.  (Id. at ¶¶ 10-17.)  The settlement amount results in a recovery that is in range of settlements that have been approved by California courts. See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458-59 (9th Cir. 2000) (affirming a settlement of one-sixth the potential recovery for weak and risky case); O'Connor v. Uber Techs., Inc., 201 F. Supp. 3d 1110, 1129 (N.D. Cal. 2016) (noting that 10% of the verdict value of non-PAGA claims is generally considered "the low end of reasonable recovery.").

The court also finds the settlement amount to be fair and reasonable in light of what the class "actually gave up by settling."  Campbell v. Facebook, Inc., 951 F.3d 1106, 1123 (9th Cir. 2020).  The Agreement provides that each class member, by accepting their portion of the

settlement and not opting out, will release defendants from:

> [A]ny and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorney's fees, damages, actions or causes of action, contingent or accrued, that were alleged or that reasonably could have been alleged based on the facts alleged in the Action, including without limitation, claims for violation of the California Labor Code, the Business & Professions Code (including Section 17200, et seq.), any IWC Wage Order; claims for restitution and other equitable relief, interest, wages, off-the-clock time, meal and rest period penalties, waiting time penalties, penalties for inaccurate wage statements, penalties pursuant to [PAGA], penalties of any nature whatsoever, and any other benefit claimed that were alleged or that reasonably could have been alleged based on the facts alleged in the Action ("Released Class Claims").

(ECF No. 40-2 ¶ 6.1; see also ¶ 6.3 for the Class Representative release terms; ¶ 6.2 for the PAGA release—regardless of whether the individual opts out of the Rule 23 class.)

The court is concerned about portions of this release language, as the parties are likely aware that they cannot release claims for any "violation of the California Labor Code, the Business & Professional Code[, and] any IWC Wage Order" that is unsupported by the facts of the case.  Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010) (noting class action settlement agreements cannot release claims of absent class members that are unrelated to the factual allegations of the class complaint).  The parties' saving grace with the language is that it explicitly ties the release to "causes of action . . . that were alleged or that reasonably could have been alleged based on the facts" of the case.  This language is sufficient to allow any future potential litigant to raise (with another court) the scope of the release, so all can determine the preclusive effect of the Agreement on whatever facts present themselves.  Thus, the court finds the scope of release to be fair and reasonable when compared to the amount of the settlement. Campbell, 951 F.3d at 1123.

Finally, though the parties have engaged in discovery allowing them to broadly evaluate the case's merits and defendants' potential maximum exposure, the court recognizes that significant discovery still lies ahead.  When coupled with this court's heavily impacted caseload and the risk of further delay in a post-trial appeal before the Ninth Circuit, it is clear that these significant delays would persist if the parties decided to take this case to trial.

Thus, the costs, risks, and delay of any potential trial weigh in favor of settlement.

### ii.   Effectiveness of proposed method of distributing relief

Under the Settlement Agreement, class members will not have to submit claims to receive payment; instead they will be identified through defendants' employment records; the settlement administrator will search for class members' most recent address through searches and by skip tracing; and class members will receive the settlement payment by mail unless they opt out of the settlement.  (ECF No. 40-2 at ¶¶ 3.3, 3.4, 5.5.2.)  Each class member's share will be calculated based on how many workweeks they worked during the class period, which can be readily determined by defendants' employment records and which will be stated on the Class Notice; class members will also have an opportunity to challenge errors relating to the number of workweeks calculated on the Notice.  (Id. at ¶¶ 3.3, 4.3, 5.5.)  This method of distributing relief is "simple and effective."  Loreto v. Gen. Dynamics Info. Tech., Inc., 2021 WL 1839989, at *10 (S.D. Cal. May 7, 2021).

### iii.   Terms of proposed award of attorney's fees

The Agreement provides that class counsel will request attorney's fees up to 33.33% percent (one-third) of the gross settlement amount, at $41,666.00.[4]  (ECF No. 40-2 at ¶ 5.2.)  In settlements that produce a common fund, courts may use either the lodestar method or percentage-of-recovery method to determine the reasonableness of attorney's fees.  In re Bluetooth, 654 F.3d at 942.  Under the percentage method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award."  Id.  However, a departure may be justified based on "special circumstances."  Id.

Given that class counsel eventually will move separately for attorney's fees and costs under Rule 23(h), the court need not determine at the preliminary approval stage whether a 33% award is reasonable.  For now, counsel's anticipated request is not so disproportionate to the relief provided to the class that it "calls into question the fairness of the proposed settlement."  Pokorny v. Quixtar Inc., 2011 WL 2912864, at *1 (N.D. Cal. July 20, 2011).

---

[4]  The Agreement is not contingent upon the court awarding any particular amount of attorney's fees, and any requested amount not granted will return to the common fund for distribution to participating class members.

In the forthcoming Rule 23(h) motion, class counsel will be expected to fully substantiate the justification for an attorney's fees award—especially a request exceeding the 25% benchmark. See In re Bluetooth, 654 F.3d at 942 (stating that district courts should "award only that amount of fees that is reasonable in relation to the results obtained").  Counsel shall address factors such as "(1) whether the results achieved were exceptional; (2) risks of litigation; (3) non-monetary benefits conferred by the litigation; (4) customary fees for similar cases; (5) the contingent nature of the fee and financial burden carried by counsel; and (6) the lawyer's reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size."  Mejia, 2020 WL 6887749, at *10 (quotation omitted).  Counsel shall brief the fee application using the lodestar method as a cross-check, which will assist the court in confirming the reasonableness of the requested fees.  For this cross check, counsel shall note the differences in the prevailing rates between the Eastern District of California and other districts when submitting their motion.

### iv.    Agreements made in connection with the proposal

Plaintiff identifies no other agreements made in connection with the proposed settlement. See Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3).  This weighs in favor of approving the settlement.

### 4.  Equitable Treatment of Class Members

The fourth factor addresses whether the proposed settlement agreement "treats class members equitably relative to each other."  See Fed. R. Civ. P. 23(e)(2)(D).  This inquiry considers both (i) equity across sub-categories, or segments, of the class, and (ii) equity between class representatives and unnamed class members.

The Settlement Agreement does not overtly discriminate between any segments of the class.  As described in the Settlement Agreement, the parties have devised a formula that portions each class member's recovery based on the number of total weeks worked in both the Rule 23 and PAGA periods.  (ECF No. 40-2 at ¶¶ 5.5.1 and 5.6.1.)  As to equitable treatment between the class representative and the class members, the court incorporates its above discussion regarding the incentive award.  Given that the court retains discretion to award a lower amount depending on the briefing provided at the final approval stage, this is not a source of impermissible inequity.

1    **C.  Settlement of PAGA Penalties Claim**

2          The 1AC's Sixth Cause of Action asserts a claim for PAGA penalties, on behalf of

3    plaintiff and all aggrieved employees, for civil penalties associated with the Labor Code

4    violations asserted in the class claims.  (ECF No. 36 at 12-15.)  As discussed at the outset, PAGA

5    claims and their settlement are fundamentally distinct from Rule 23 class claims.  See Hamilton,

6    39 F.4th at 583 ("Rule 23 class actions and PAGA actions are so conceptually distinct that class

7    action precepts generally have little salience for PAGA actions."); Canela, 971 F.3d at 852

8    (noting "the different remedial schemes that exist in Rule 23 class actions and PAGA suits").

9          Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor

10   code violations on behalf of herself and other current or former employees.  Cal. Lab. Code

11   § 2699(a).  "Plaintiffs may bring a PAGA claim only as the state's designated proxy, suing on

12   behalf of all affected employees."  Kim, 9 Cal. 5th at 87 (emphasis in original).  Because a PAGA

13   plaintiff serves "as the proxy or agent of the state's labor law enforcement agencies," "a judgment

14   in th[e] action binds all those, including nonparty aggrieved employees, who would be bound by a

15   judgment in an action brought by the government."  Arias v. Superior Ct., 46 Cal. 4th 969, 986

16   (2009).  "Unlike a class action, there is no mechanism for opting out of a judgment entered on a

17   PAGA claim."  Amaro v. Anaheim Arena Mgmt., LLC, 69 Cal. App. 5th 521, 541 n.5 (4th Dist.

18   2021) (internal quotes omitted).  Thus, a PAGA plaintiff owes a duty both to their "fellow

19   aggrieved workers," who will be inalterably bound by the judgment on the PAGA claim, and to

20   the public at large because "they act, as the statute's name suggests, as a private attorney

21   general."  O'Connor, 201 F. Supp. 3d at 1133–34.

22         Under PAGA's remedial scheme, civil penalties recovered are distributed between "the

23   aggrieved employees" (25%) and the LWDA (75%).  Cal. Lab. Code § 2699(i).  Any settlement

24   of PAGA claims must be approved by the court; and the proposed settlement must also be sent to

25   the LWDA at the same time it is submitted to the court.[5]  Cal. Lab. Code § 2699(*l*)(2).

26

27   ---

[5]  Plaintiff states she provided the LWDA with written notice of the suit in January of 2020 at the
inception of this case, but the LWDA did not respond.  (ECF No. 36 at ¶¶ 63-64.)  Counsel
28   asserts the LWDA received a copy of the settlement agreement.  (Harris decl. at ¶ 9.)

Although the court does not evaluate the settlement of PAGA claims under the Rule 23 criteria, it must still inquire into the fairness of the PAGA settlement.  "[I]n reviewing a settlement that includes both a Rule 23 class and a PAGA claim, the court must closely examine both aspects of the settlement."  O'Connor, 201 F. Supp. 3d at 1133 (emphasis in original). Based on the best guidance at hand—from the LWDA's input in O'Connor, in the absence of a definitive governing standard—district courts typically apply "a Rule 23-like standard" asking whether the settlement of the PAGA claims is "fundamentally fair, reasonable, and adequate." Haralson, 383 F. Supp. 3d at 972; see Mondrian v. Trius Trucking, Inc., 2022 WL 2306963, at *7 (E.D. Cal. June 27, 2022) (noting lack of binding standard for approving PAGA settlements and adopting "fundamentally fair, reasonable, and adequate" standard based on LWDA's O'Connor commentary).

"While a proposed settlement must be viewed as a whole, the [c]ourt must evaluate the adequacy of compensation to the class as well as the adequacy of the settlement in view of the purposes and policies of PAGA.  In doing so, the court may apply a sliding scale."  O'Connor, 201 F. Supp. 3d at 1134 (cleaned up).  "For example, if the settlement for the Rule 23 class is robust, the purposes of PAGA may be concurrently fulfilled."  Id.  Non-monetary relief provided through the settlement may also satisfy PAGA's interests in enforcement and deterrence.  Id. at 1134-35.  Conversely, in cases where a settlement provides "relatively modest" amounts in settlement of the class claims compared to their verdict value, and there is no non-monetary relief provided, the PAGA aspect of the settlement must stand on its own to "substantially vindicate" PAGA's policy interests.  Id. at 1135.

The Settlement Agreement provides for $5,000 in PAGA penalties, out of the gross settlement amount of $125,000.  (ECF No. 40-2, ¶¶ 10, 17.)  Class counsel estimates, on the high end, that PAGA penalties at trial could be as much as $160,000 if calculated at $100 per violation.  (ECF No. 40-1 at ¶ 16.)  However, the court concurs with counsel's assessment regarding the uncertainty of the case and notes the cases cited in counsel's declaration indicating PAGA penalty assessments at a fraction of that amount.  See, e.g., Carrington v. Starbucks Corp., 30 Cal. App. 5th 504, 529 (2018) (noting the trial court's discretionary authority to award lesser

penalties where defendant exercised a good faith attempt to comply with the Labor Code and affirming the trial court's award of $5 per violation).  While the court would not describe the potential individual payments to class members as "robust," the court is persuaded that PAGA's interests are satisfied given the difficulties plaintiff would have in litigating this case through trial and given the parties' participation in settlement talks after significant discovery and under the guidance of a neutral mediator.  O'Connor, 201 F. Supp. 3d at 1134.

Considering the other factors from Rule 23(e)(2), the court finds the PAGA portion of the settlement to be similarly fair and adequate for the PAGA members.  Though the PAGA payment will be much lower than the Rule 23 payments, this will ultimately benefit the class members, as PAGA's 75%/25% allocation would only shift funds away from the class members—who appear to be the same set of individuals as the PAGA members.  See Rodriguez v. Danell Custom Harvesting, LLC, 293 F. Supp. 3d 1117, 1133 (E.D. Cal. 2018) (approving 0.6% PAGA payment because LWDA did not object to terms of settlement).  The court also takes the LWDA's decision to not comment on the settlement after being notified thereof as implicit approval of the parties' agreement.  See Mancini v. W. & S. Life Ins. Co., 2018 WL 4489590, at *2 (S.D. Cal. Sept. 18, 2018) (taking LWDA's "acquiescence as indication that the settlement is presumptively reasonable").  Finally, the parties have accounted for the distinction between Rule 23 opt outs and PAGA's inability to do so, as the settlement agreement and notice inform as much.  Uribe v. Crown Bldg. Maint. Co., 70 Cal. App. 5th 986, 1001 (4th Dist. 2021), as modified on denial of reh'g (Oct. 26, 2021) ("A defining feature of the class action procedure is that a class member may opt out of the class if he or she does not wish to be bound by the result of the suit . . . . PAGA actions do not afford the same opt out feature.") (cleaned up); Amaro, 69 Cal. App. 5th at 541 n.5 ("Unlike a class action, there is no mechanism for opting out of a judgment entered on a PAGA claim."); Rutter, Cal. Prac. Guide Civ. Pro. Before Trial Ch. 14-C [14:134.1] ("There is no mechanism by which an aggrieved employee can 'opt out' of a PAGA claim." (citation omitted)).

For these reasons, the court finds the settlement of the PAGA Penalties claim to be fundamentally fair, reasonable, and adequate."  See Haralson, 383 F. Supp. 3d at 972.

///

**D.   Settlement Administrator; Notice to Class/PAGA Members; Fairness Hearing**

    **1.   Settlement Administrator**

To ultimately approve a class action settlement, a district court must ensure class members were notified of the proceedings, had the opportunity to opt out or (for those who remain in the settlement) object to any of the settlement's terms, and were provided the chance to appear at fairness hearing.  Fed. R. Civ. P. 23(e)(1)-(5).  To effectuate these procedures, the parties have agreed to retain Simpluris to handle the notice and claim administration process.  (ECF No. 40-2 at ¶¶ 1.38, 3.2.)  The court approves.

    **2.   Notice to Class Members**

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1); see Hanlon, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement under Rule 23(e).").  For settlements under Rule 23(b)(3), the court is required to:

> [D]irect to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort, [by] United States mail, electronic means, or other appropriate means, [concerning] the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on members . . . .

Fed. R. Civ. P. 23(b)(3); see also Fed. R. Civ. P. 23(e)(4) and (5) (requiring the court provide class members with an opportunity to be excluded from the settlement or object to the terms).  A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citations omitted).

Here, the Class Notice generally describes the terms of the settlement and provides a link to a forthcoming website that will contain documents from the court's docket.  The form allots space to notify each class member of how many workweeks they worked and what their estimated

total award will be—properly distinguishing between the Rule 23 and PAGA workweeks.  (ECF No. 40-3.)

The Settlement Agreement requires the Settlement Administrator to mail out notices of the class action settlement within 30 days of the court's preliminary approval.  (ECF No. 40-2 at ¶ 3.4.)  It then allows 45 days from the mailing of the proposed Notice of Class Action Settlement for class members to (a) opt out of the settlement, (b) object to the terms of the settlement, or (c) dispute their dates of employment and estimated recovery amount listed on the Notice.  (Id. at ¶ 4.1; ECF No. 40-3 at ¶ 6.)  The Settlement Agreement provides that those who opt out will retain their right to sue but receive no payment, while those who do not opt out will ultimately receive their "Individual Settlement Payment" by check.  (ECF Nos. 40-2 at ¶¶ 1.20 and 4.2; 4-40-3 at ¶¶ 6(a) and (c).)  The Settlement Agreement contains a procedure for distribution of the PAGA payment should a class member opt out of the Rule 23 class settlement, and the Class Notice informs the potential class member that opting out of the Rule 23 class does not affect the PAGA settlement.  (ECF Nos. 40-2 at ¶ 5.6.2; 40-3 ¶ 6(c).)  Finally, a space notifying the class members of the date and time of the court's fairness hearing is properly provided.  (ECF No. 40-3 at 9.)

The court approves of the Class Notice and schedule noted therein—with one exception. So that the absent class members can evaluate their choice to opt out of the Rule 23 class but understand they cannot do so with the PAGA settlement, the notice shall provide the class members with the amounts they will be awarded for each segment of the settlement.  One line stating the Rule 23 award and another line for the PAGA award will suffice.  (See ECF No. 40-3 at ¶ 4 ("According to Defendants' records, you worked _____ Eligible Workweeks during the Class Period and _____ Eligible Workweeks during the PAGA Period. Based on your number of Eligible Workweeks, your estimated total distribution will be approximately **\$_____  for the Rule 23 settlement and \$_____  for the PAGA settlement**.").)  The remainder of the notice meets the requirements of Rule 23(b)(3) and 23(e)(4) and (5), as well as relevant case law.  Churchill Vill., 561 F.3d at 575.

///

### 3.  Further Scheduling and the Fairness Hearing

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members."  In re Bluetooth, 654 F.3d at 946 (cleaned up).  To protect the rights of absent class members, Rule 23(e) requires the court approve such settlements "only after a fairness hearing . . . ."  Id.; Rule 23(e)(2).

For clarity (and given the significant delay between the filing of the motion and this order), the court now reiterates the remaining deadlines as per in the Settlement Agreement, the Class Notice, and the parties' proposed order.  (See ECF Nos. 40-2; 40-3, 41.)  Additional categories were added by the court as appears to be required by the Settlement Agreement.  The deadline for fairness hearing has been set to account for any delay in remailing notices to the class members under the procedures of ¶ 3.4.

| | |
|---|---|
| Deadline for defendants to provide to Claims Administrator a database of all putative Class Members, including names, last known addresses, social security numbers, and dates of employment (¶ 3.3). | **June 19, 2023** |
| Deadline for mailing of Class Notices by Claims Administrator (¶ 3.4). | **July 10, 2023** |
| Last day for Class Members opt out, submit written objections to the court, or dispute the workweeks calculated (¶ 4.1.1). | ***45 days from the mailing (or remailing) of the Class Notice*** |
| Last day for plaintiff to request final approval of the settlement agreement, attorneys' fees, and incentive award. | **October 30, 2023** |
| Last day for Settlement Administrator to file Proof of Mailing (¶ 3.5). | **October 30, 2023** |
| Fairness Hearing Date (Courtroom 25). | **December 5, 2023 9:00a.m.** |

1

**ORDER**

2     For the above reasons, it is HEREBY ORDERED that:

3   1. Plaintiff's unopposed motion for provisional class certification and preliminary

4      approval of settlement (ECF No. 40) is GRANTED;

5   2. As defined above and for purposes of settlement only, the Rule 23 class is

6      provisionally certified, plaintiff Annica Bowen (a.k.a. Annica Palacio) is appointed

7      class representative, and Stephen M. Harris and Louis Benowitz are appointed class

8      counsel;

9   3. Simpluris, Inc. is appointed Claims Administrator for this class action settlement;

10   4. The Settlement Agreement (ECF No. 40-2) is preliminarily approved as fair,

11      reasonable, and adequate;

12   5. The parties' plan for notice to the class is the best notice practicable and satisfies the

13      due process concerns of Rule 23, after small modifications are made; and

14   6. The parties shall follow the deadlines set herein, as delineated by the Settlement

15      Agreement.  A fairness hearing is scheduled for December 5, 2023, at 9:00 a.m., in

16      Courtroom 25 of the Matsui Courthouse, 501 I. St., Sacramento, CA, 95814.

17 Dated:  June 9, 2023

18

19                       KENDALL J. NEWMAN
                      UNITED STATES MAGISTRATE JUDGE

20

21 bowe.2318

22

23

24

25

26

27

28