Stephen M. Harris, Bar No. 110626
stephen@smh-legal.com
THE LAW OFFICE OF STEPHEN M. HARRIS, APC
6320 Canoga Avenue, Suite 1500
Woodland Hills, California 91367
Telephone: (818) 924-3103
Facsimile: (818) 924-3079


Smith & Benowitz
Louis Benowitz, Bar No. 262300
louis@smithbenowitz.com
4515 Van Nuys Blvd., Suite 302
Sherman Oaks, CA, 91403

Attorneys for Plaintiff, ANNICA B. BOWEN,
a.k.a. ANNICA PALACIO, individually,
and on behalf of similarly situated employees

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNICA B. BOWEN, a.k.a. ANNICA PALACIO, individually, and on behalf of similarly situated employees,<br><br>Plaintiff,<br><br>v.<br><br>WILLOW SPRINGS MANAGEMENT CA, LLC, a Delaware Limited Liability Company, California HCJ EE Group, LLC, California Senior Living EE Group, LLC, Folsom Investors, L.P. dba, Empire Ranch Alzheimer's Special Care Center, , and DOES 1 -100, inclusive,<br><br>Defendants. | Case No. 2:20−CV−02318−KJN<br><br>Date:  12-5-23<br>Time  9:00 a.m.<br>Courtroom:  25<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITES** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 5, 2023 at nine a.m., or as soon

thereafter as the matter may be heard in Courtroom 25 of the above-entitled Court, located at 501 I Street Sacramento, California, 95814, Plaintiff Annica Bowen a.k.a. Annica Palacio ("Plaintiff" or "Bowen") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure Rule 23, for an Order finally approving the class action and PAGA settlement agreed to by the parties in this matter.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the attached Memorandum of Points and Authorities in Support of Motion ; (3) the Harris Declaration, and the exhibits attached thereto, the Bowen Declaration, and the Benowitz Declaration; (4) the [Proposed] Order Granting Final Approval of Class Action and PAGA Settlement, filed concurrently herewith; (5) the records, pleadings, and papers filed in this action; and (6) upon such other documentary and oral evidence or argument as may be presented to the Court at the hearing of this Motion.

DATED: October 30, 2023              THE LAW OFFICES OF STEPHEN M.
                                     HARRIS, P.C.


                             By:  _____/s/ Stephen M. Harris_____
                                     Stephen M. Harris
                                     Attorneys for Plaintiff ANNICA BOWEN
                                     A.K.A. ANNICA PALACIO

FINAL APPROVAL MOTION

# Table of Contents

I. INTRODUCTION ........................................................................................................... 3

II. FACTS AND PROCEDURE ........................................................................................ 4

    A.    The Class Action Complaint ......................................................................... 5

    B.    Investigation And Discovery ......................................................................... 7

    E.    The Settlement Agreement ............................................................................ 8

    F.    The Proposed Settlement ............................................................................... 8

        1.    The Settlement Class .......................................................................... 8

        2.    The Settlement Payments ................................................................... 9

        3.    The Notice to the Class and Others of the Settlement ...................... 9

        4.    The Release of the Class .................................................................. 10

        5.    Attorneys' Fees, Costs and Enhancements .................................... 10

III. ARGUMENT ............................................................................................................ 11

    A.    The Court Should Approve The Settlement As Fair, Reasonable And
        Adequate ...................................................................................................... 11

        a.    Legal Issues Regarding Rest Breaks ............................................. 14

    1.    PAGA Settlement .................................................................................... 20

    I.    Pre-Certification Standards .................................................................... 20

    J.    No Evidence of Collusion ...................................................................... 21

    K.    Class Certification ................................................................................. 23

    L.    PAGA Approval .................................................................................... 27

IV.  CONCLUSION ....................................................................................................... 28

i

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007)................................ 18

*Amchem Prods., Inc., v. Windsor* 521 U.S. 591 (1997)................................................ 24

*Augustus v. ABM Security Services, Inc.*, 2 Cal.5th 257 (2016).............................. 14

*Browning v. Yahoo!, Inc.*, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007)... 17, 18, 19

*Chamberlain v. Baker Hughes, a GE Co., LLC*, 2020 WL 4350207 (E.D. Cal. July 29, 2020) ................................................................................................................. 20,28

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)......................... 12

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ....................... 12,13

*G. F. v. Contra Costa Cnty.*, 2015 WL 4606078 (N.D. Cal. July 30, 2015). ........... 23

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..................... 17, 20,25,26

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ................................. 25

*Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. 2011)................................................. 19

*Hopson v. Hanesbrand Inc.*, 2009 WL 928133 (N.D. Cal. 2009) ............................ 13

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ....... 20, 21

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000).................... 20,21,26

*In re Netflix Privacy Litig.*, 2013 WL 1120801 (N.D. Cal. March 18, 2013) .......... 20

*Litty v. Merrill Lynch & Co.,* 2015 WL 4698475 (C.D. Cal. Apr. 27, 2015)........... 24

*Naranjo v. Spectrum Sec. Servs.*, 13 Cal.5th 93 (2022).......................................... 16

*Naranjo v. Spectrum Sec. Servs,* 40 Cal.App.5th 444 (2019)................................. 15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ................................................................................................................................ 12

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615 (9th Cir. 1982) ..................................................................................... 11,12

*Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008)............................................... 25

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) ................................................. 25

*Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, 2020 WL 5074392 (N.D. Cal. Aug. 27, 2020) .............................................................................................................. 23

*Roes v. SFBSC Mgmt.*, 944 F.3d 1035 (9th Cir. 2019) ............................................ 21

*Singh v. Roadrunner Intermodal Services, LLC*, 2018 WL 2412325 ............. 17,22,23

*Smith v. Am. Greetings Corp.*, 2016 WL 362395 (N.D. Cal. Jan. 29, 2016) ............ 23

*Staton v. Boeing*, 327 F.3d 938 (9th Cir. 2003) ........................................ 11

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) .................................... 21

*Wren v. RGIS Inventory Specialists*, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) . 17

## <u>Statutes</u>

Cal. Lab. Code § 2699 ................................................................ 27

Fed. R. Civ. P. Rule 23 ................................................... 11,13,23,24,26,27

FINAL APPROVAL MOTION

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff and defendants have reached a settlement of $125,000.00 of the class and PAGA claims, and the court granted preliminary approval of the settlement on June 9, 2023. See, Dkt. # 52. Defendants have agreed to pay the total sum provided for by the provisions of the Agreement, more fully described below and in the Agreement attached as exhibit 1. (See, Exhibit 1 to Declaration of Stephen M. Harris, supporting the motion for final approval, "Harris Declaration").

Plaintiff and her counsel believe the Settlement is fair and reasonable, providing class members' similar if not superior remedies than they could otherwise have expected to receive if the case had been successfully tried, but without the delay and risks associated with trial. Plaintiff now moves for final approval of the settlement. The settlement  provides Class Members with remedies similar to what they could expect to receive if the case were successfully tried, but without the delay and risks associated with trial, and it should therefore be approved.

The claims administrator sent the class notice to 607 individuals. One-hundred sixty five notices were returned, while 153 of these notices were re-mailed to a valid address. There were 12 invalid addresses. The settlement administrator maintains a settlement website and toll free number for class member inquiries. (Declaration of Jennifer Beliveau "Beliveau Declaration" ¶¶ 3-9, attached as exhibit 2 to Harris Declaration, and exhibit A, attached thereto.)

To date, there have been no requests for exclusions, disputes, or objections by class members. There are 607 Participating Class Member who worked 12,609.90 eligible workweeks in total. The average estimated Individual Participating Class Member payment is $88.69, and the highest estimated Individual Participating Class Member payment is $1,003.86. And there are 310 PAGA Members who worked 5,247.08 eligible workweeks in total. The average estimated PAGA Member payment is $4.03 and the highest estimated PAGA Member payment is $19.09. (Beliveau Declaration, ¶¶ 10-15.) The average estimated Settlement Amount payment is $90.75 and the highest estimated Settlement Amount payment is $1,022.95. (*Id.* at ¶ 16.)

Based on the facts and legal authority set forth herein, the Settlement is reasonable and final approval should be granted.

## II. FACTS AND PROCEDURE

This lawsuit was filed April 30, 2020, in Los Angeles County Superior Court. The action was removed in July of 2020, to the United States District Court for the Central District. After filing its answer, defendant filed a motion to transfer the action to this district, in September of 2020. After the parties filed opposition and reply papers, the district court, in November of 2020, ordered that this action be transferred to the Eastern District. (Dkt. ## 1, 8, 11-12, 14, 20-21.)

The court filed its initial scheduling order in November of 2020, and an amended scheduling order on December 21, 2020. (Dkt. ## 22, 24-25). The court

initially scheduled a discovery cut-off of August 2, 2021, expert disclosures in October of 2021, and a class certification motion deadline of December 1, 2021. (Dkt. # 25.) On June 24, 2021, the court entered an order granting the parties' stipulation to extend the discovery cut off dates and to extend the class certification motion deadline. The filing deadline was moved to March 1, 2022. (*Id.* # 31.)

The parties conducted a mediation of this matter before David Phillips, Esq., in June of 2021. The parties fully executed a Memorandum of Understanding in July of 2021. Thereafter, the parties negotiated a formal Class Action Settlement Agreement and Class Notice. The Agreement was ultimately entered into by all parties in December of 2021. (Harris Declaration, ¶ 5, and exhibits 1 to Harris Declaration; Beliveau Declaration, ¶¶ 1-17, and exhibit A.)

Plaintiff filed a formal notice of settlement on December 6, 2021, and the court thereafter ordered that Plaintiff file a first amended complaint and motion for preliminary approval by March 7, 2022. Plaintiff filed the first amended complaint in January of 2022, and Defendants filed an answer to the first amended complaint in February of 2022. (Dkt. ## 32-39.)

## A. The Class Action Complaint

This is a wage and hour class and representative action filed by Plaintiff, on behalf of non-exempt care givers employed by Defendants during the time period embraced by the lawsuit. The three care centers where the wage and hour violations are alleged to have occurred are:  (1) Empire Ranch Alzheimer's Special Care

Center, located in Folsom, California;  (2) Willow Springs Alzheimer's Special Care Center located in  Redding, California; and (3) Blossom Grove Alzheimer's Special Care Center  located in Redlands, California. (First Amended Complaint, Dkt. # 36, "FAC", ¶¶ 17-18; Harris Declaration, ¶ 6.)

Plaintiff asserts that Defendants require Class Members to remain on site and in possession of their communication devices during their breaks, thus representing an unlawful denial of rest and meal breaks. Moreover, the communication devices which Defendants furnished (which Plaintiff and Class members were to monitor at all times) functioned on site and not outside of the premises. Thus, as a practical matter, Plaintiff and Class Members could not leave the premises since their communication devices did not function outside the premises. (FAC, ¶¶ 7-8.)

Plaintiff claims that she and the putative class members are entitled to one hours' wages for each break violation, and related relief, based on such derelictions. The Private Attorney General Act claim seeks penalties based on the same derelictions, as well as Defendants' time rounding policies. (FAC, ¶¶ 25-27, 57-68.)

The initial class action complaint contained the following six causes of action: Failure to provide meal periods, failure to provide rest periods, waiting time penalties, failure to provide itemized wage statements, unfair competition, and violations of the Private Attorneys General Act ("PAGA"). The defendants originally named were JEA Senior Living Health & Welfare Benefit Plan, LLC, Willow Springs Management CA, LLC, Blossom Grove, LLC, and Empire Ranch

Alzheimer's Special Care Center. (Dkt. # 1, Class Action Complaint.)

The FAC contains the same legal theories. However, the FAC names the following defendants:  Willow Springs Management CA, LLC, a Delaware Limited Liability Company, California HCJ EE Group, LLC, California Senior Living EE Group, LLC,  and Folsom Investors, L.P. dba, Empire Ranch Alzheimer's Special Care Center. These entities operated the facilities located at Willow Springs Alzheimer's Special Care Center (California HCJ EE Group LLC, by way of a contract with JEA Senior Living), Blossom Grove Alzheimer's Special Care Center (California HCJ EE Group LLC, pursuant to a contract with JEA Senior Living), and Empire Ranch Alzheimer's Special Care Center (California Senior Living EE Group LLC, by way of a contract with JEA Senior Living). They also employed the members of the putative class. (Harris Declaration, ¶ 6; FAC, ¶¶ 17-19.)

Frontier Management, LLC (an entity unrelated to defendants) took over management of the facilities as follows:  Willow Springs on or around October 2, 2020, Blossom Grove on or around September 1, 2020, and Empire Ranch on or around July, 2021. (Harris Declaration, ¶ 7.)

**B. Investigation And Discovery**

Plaintiff conducted a pre-filing and post-filing investigation, including, but not limited to, serving written discovery, reviewing Defendants' responses and supplemental responses, reviewing approximately 400 documents produced by Defendants, and interviews of class members.  The documents produced included

the policies of the facilities as well as the underlying agreements relating to

operation thereof and who employed class members. Plaintiff's personnel file was

also reviewed. (Harris Declaration, ¶ 8.)

**C. Mediation**

The parties participated in a mediation before respected mediator David

Phillips in June of 2021, and during the mediation further discussed the litigation

and the underlying factual background, before agreeing to the terms of an MOU.

(*Id.*)

**D. Preliminary Approval**

After filing of a motion for preliminary approval by Plaintiff, this court

granted preliminary approval of the Agreement on June 9, 2023. (Dkt. ## 40, 42,

and 52.)

**E. The Settlement Agreement**

The Agreement is attached to the Harris Declaration as exhibit 1.

**F. The Proposed Settlement**

**1.    The Settlement Class**

The settlement class consists of "All current or former nonexempt caregivers

working at the Willow Springs Facility, the Empire Ranch Facility, and/or the

Blossom Grove Facility at any time between April 30, 2016, through September 2,

2021." ("Settlement Class"). (Agreement, ¶ 1.4.)

### 2.     The Settlement Payments

The gross settlement payment is $125,000.00. (*Id.* ¶ 1.19.) The individual settlement payments are calculated by dividing the number of eligible work weeks worked by each class member against the total number of work weeks.[1] (*Id.* ¶ 5.1.1.)

The PAGA payment is $5,000.00, with 75% of this sum payable to the LWDA. The period of time covered by the PAGA payment is April 30, 2019, through September 2, 2021. (*Id.* ¶¶ 1.28-1.29.)

### 3.     The Notice to the Class and Others of the Settlement

A Settlement Administrator disseminated notice of the Settlement and the hearing on a Final Approval Motion (see, Beliveau Declaration, ¶¶ 1-16; Agreement ¶¶ 3.1, 4.1 to 4.3.) Notice was sent by First-Class U.S. Mail, postage paid, to potential Settlement Class members. (*Id.*)

The claims administrator sent the class notice to 607 individuals. One-hundred sixty five notices were returned, while 153 of these notices were re-mailed to a valid address. There were 12 invalid addresses. The settlement administrator maintains a settlement website and toll free number for class member inquiries. Beliveau Declaration, ¶¶ 1-9.) Notice of the settlement, preliminary approval, and this motion was also given to the State of California. (Harris Declaration, ¶ 10.)

---

[1] The number of work weeks is 12,609.90. (Harris Declaration, ¶ 9.)

### 4.    The Release of the Class

Class Members who did not opt out of the Settlement according to the procedures set forth in the Settlement Agreement release any and all claims (including unknown claims) or causes of action that were, or could have been, asserted by Plaintiff or any Class Members against defendants and the parties named in the release, including without limitation, claims for violation of the California Labor Code, the Business & Professions Code (including Section 17200, et seq.), any IWC Wage Order; claims for restitution and other equitable relief, interest, wages, off-the-clock time, meal and rest period penalties, waiting time penalties, penalties for inaccurate wage statements, and penalties pursuant to the Private Attorneys General Act ("PAGA"). (Agreement, ¶ 6.)

### 5.    Attorneys' Fees, Costs and Enhancements

Plaintiff has brought a separate motion for final approval of the attorneys fees, costs, and representative enhancement payment.

### 6.    Claims Administrator/Notice

The claims administrator sent the class notice to 607 individuals. One-hundred sixty five notices were returned, while 153 of these notices were re-mailed to a valid address. There were 12 invalid addresses. The settlement administrator maintains a settlement website and toll free number for class member inquiries. (Beliveau Declaration, ¶¶ 1-9.)

To date, there have been no requests for exclusions, disputes, or objections by

class members. There are 607 Participating Class Member who worked 12,609.90 eligible workweeks in total. The average estimated Individual Participating Class Member payment is $88.69, and the highest estimated Individual Participating Class Member payment is $1,003.86. And there are 310 PAGA Members who worked 5,247.08 eligible workweeks in total. The average estimated PAGA Member payment is $4.03 and the highest estimated PAGA Member payment is $19.09. The average estimated Settlement Amount payment is $90.75 and the highest estimated Settlement Amount payment is $1,022.95. (*Id.* at ¶¶ 10-16.)

## III. ARGUMENT

### A. The Court Should Approve The Settlement As Fair, Reasonable And Adequate

To approve a class action settlement under Federal Rule Civil Procedure 23(e), the Court must find that the settlement is "fair, reasonable, and adequate," recognizing that "it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Staton v. Boeing*, 327 F.3d 938, 960 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir.1998); *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

As discussed in greater detail below, the settlement presented here is entitled to a presumption of fairness. First, the settlement was reached only after extensive arm's-length negotiations. (See Harris Declaration, ¶¶ 5, 8, 12, 20-22.) Class

Counsel and counsel for Defendants are experienced in class action litigation, acted in good faith, and represented their clients' best interests in reaching the settlement. (*Id.*) In addition, Plaintiff supports the settlement, which also supports approval, as shown below.

In order to assess a settlement, the district court must balance a number of factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (quoting *Officers for Justice*, 688 F.2d at 625.). The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances of each case. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citing *Officers for Justice*, 688 F.2d at 625).

In affirming the settlement approved by the trial court in *Class Plaintiffs*, the Ninth Circuit noted that it "need not reach any ultimate conclusions on the contested

issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Class Plaintiffs*, 955 F.2d at 1291 (internal quotation and citation omitted).

## B. The Settlement and The Benefits It Provides Warrant Final Approval

This factor therefore strongly supports settlement approval, with class members receiving payment based on the number of shifts worked. *Hopson v. Hanesbrand Inc.*, 2009 WL 928133 at *8 (N.D. Cal. 2009)  (holding that benefits of settlement supported approval where recovery "appear[ ed] to be a reasonable compromise").

## C. The Risks Inherent In Continued Litigation And Trial Support Final Approval

The relief available to Class Members meets and exceeds the fair, reasonable and adequate standard of Rule 23. This is especially true since Defendants vigorously disputed Plaintiff's claims and there was a significant risk of non-recovery or a recovery substantially less than the benefits afforded Class Members under this Settlement. By settling now, rather than proceeding to trial, Class Members will not have to wait (possibly years) for their relief, and will not have to bear the risk that class certification is denied or that Defendants prevail at trial. There are significant risks associated with any case seeking class-wide relief.

Here, the named Defendants no longer operate the residential care facilities, thus negating any claim of ongoing violations. Their lack of any ongoing interest in

13

the facilities also raises the issue of potential collectability problems arising if Plaintiff did obtain a judgment in favor of the class. (Harris Declaration, ¶¶ 6-7, 11.)

Moreover, the Defendants produced their policy manuals, and these manuals are facially compliant, including meal and rest break policies. However, the policies do not address whether employees are free to leave the premises during their rest breaks, and whether or not communication devices must at all times be in the possession of class members. (Harris Declaration, ¶ 12.)

### a.  Legal Issues Regarding Rest Breaks

Regarding rest breaks, a requirement of on premises rest breaks establishes that the rest breaks are invalid. *Augustus v. ABM Security Services, Inc.*, 2 Cal.5th 257, 270 (2016); The DLSE has also revised the Frequently Asked Questions on its web site, stating the following:

> **5. Q. Can my employer require that I stay on the work premises during my rest period?**
> **A.** No, your employer cannot impose any restraints not inherent in the rest period requirement itself. In Augustus v. ABM Security Services, Inc., (2016) 5 Cal.5th 257, 269, the California Supreme Court held that the rest period requirement "obligates employers to permit-and authorizes employees to take-off-duty rest periods. That is, during rest periods employers must relieve employees of all duties and relinquish control over how employees spend their time." (citation omitted) As a practical matter, however, if an employee is provided a ten minute rest period, the employee can only travel five minutes from a work post before heading back to return in time. https://www.dir.ca.gov/dlse/FAQ_RestPeriods.htm (accessed 5/28/2019).

Thus, whether Defendants' policies require rest periods on site, and whether

---

communication devices must be maintained at all times by class members, remain at issue. However, these issues potentially could be individual rather than class wide, given the existence of the three different facilities, that the facilities are not all operated by the same entities, and the potential for individual variance among employees. (Harris Declaration, ¶ 12.)

### b.  Potential Damages

One damage model based on meal and rest break violations (the primary violation at issue) involves multiplying the total number of work weeks (here 12,609.90) by the average hourly rate of class members (Plaintiff was paid $12.00 an hour) and assuming three violations a week. In those circumstances, the total class damages, based on missed breaks, are $453,924.00.[2] (Harris Declaration, ¶ 14.)

We have been unable to substantiate in our investigation that hours were rounded such that class members were denied wages. (*Id.*, ¶ 15.) Also, at the time of the settlement, it was unclear whether waiting time penalties and wage statement violations can be recovered for meal and rest period violations since the California Supreme Court had granted review of *Naranjo v. Spectrum Security Services, Inc.*, 40 Cal.App.5th 444, 474 (2019) (holding that such relief is unavailable). However,

---

[2] Since the policy manuals produced permit class members to leave the premises for meal periods, our analysis assumes the violations are all rest period violations. (Harris Declaration, ¶ 14.)

the California Supreme Court later did rule such penalties were available. See,

*Naranjo v. Spectrum Sec. Servs.*, 13 Cal.5th 93, 117 (2022). The Labor Code

Section 203 penalty does dramatically expand available relief since the Section 203

penalty would be worth approximately $930,000. (This is based on 30 days wages

payable to 323 former employees, at the rate of $12.00 an hour.[3]) (Harris

Declaration, ¶ 16.)

Thus, based on the potential recovery for meal and rest break violations, the

gross settlement amount is approximately 27% of the available damages.  (Harris

Declaration, ¶ 14.) Regarding the PAGA claim, we estimate that the total value

(under the assumptions made) is approximately $160,600.00, but the award could be

far less based on the manner in which other courts arrived at PAGA penalty awards.

The resolution of this claim is reasonable since it is based on a settlement where

liability is disputed and is a reasonable percentage of the total settlement amount.

(Harris Declaration, ¶¶ 17-18.)

### c.  Gross Settlement In Light of Potential Recovery

Based on the potential recovery estimates we have provided, the Gross

Settlement amount of $125,000 represents approximately 27% of Defendants

---

[3] However, since Frontier Management has taken over the operations of the facilities, the number of former employees could reasonably equate to the number of the putative class, which is 607. In those circumstances, the value of the statutory penalty of 30 days wages would be $1,748,160. (Harris Declaration, ¶ 16.)

potential statutory damage exposure. But there are substantial risks of further litigation given the complex issues that could defeat class certification, the need to receive a favorable verdict capable of withstanding a potential appeal, and whether a judgment can be collected now that Defendants are no longer the employers of class members. (Harris Declaration, ¶¶ 9-18, 21.) Plaintiff contends that these risks weigh in favor of granting final approval. See *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *8 (N.D. Cal. Apr. 1, 2011) ("[D]istrict courts have found that settlements for substantially less than the plaintiffs' claimed damages were fair and reasonable, especially when taking into account the uncertainties involved with litigation."); *Singh v. Roadrunner Intermodal Services, LLC,* supra, 2018 WL 2412325, at *6 (same).

The settlement eliminates any potential risk of non-recovery if Defendants were to prevail on these defenses. *Browning v. Yahoo!, Inc.*, No. 04-cv-1463, 2007 WL 4105971, at * 14 (N.D. Cal. Nov. 16, 2007) (holding that "legal uncertainties at the time of settlement-particularly those which go to fundamental legal issues-favor approval").

If the parties had been unable to resolve this case through settlement, the continued litigation would have been expensive and lengthy, requiring significant and costly involvement from expert witnesses. (Harris Declaration, ¶ 21; see Hanlon, 150 F.3d at 1025 (holding that district court should evaluate the settlement in light of "the risk, expense, complexity, and likely duration of further litigation").)

17

The settlement, by contrast, provides immediate relief. This factor thus also supports approval. (Id.; *Browning*, 2007 WL 4105971 at * 10 (holding that settlement approval was proper where "further litigation before this Court would be time consuming, complex, and expensive").

Therefore, the relief offered in the Settlement—especially when measured against the potential weaknesses of Class Members' claims, the risk that the Class would not be certified for trial, and the time and expense that would be required to proceed through trial—is highly beneficial to the Class and provides a strong basis for final approval.

**D. The Settlement Eliminates The Risk of Decertification Or Other Challenge to Class Action Status Through Trial**

The settlement eliminates any risk that further discovery might raise manageability concerns that would cause the Court to reevaluate class certification. This factor also weighs in favor of approval of the settlement. *Browning*, 2007 WL 4105971 at * 11 (holding that settlement approval was proper where there was a risk that settlement approval might not be maintained through trial.)

Plaintiff's Counsel believes that this case is appropriate for class certification in the litigation context. However, Defendants would strongly oppose class certification were the case to proceed. "The value of a class action depends largely on the certification of the class, and…class certification undeniably represents a serious risk for plaintiffs in any class action lawsuit." *Acosta v. Trans Union, LLC*,

18

243 F.R.D. 377, 392 (C.D. Cal. 2007).)

**E. The Extent of Discovery And The Stage of the Proceedings Favor Settlement Approval**

Plaintiff in this litigation has undertaken sufficient investigation, analysis, and discovery, so that Plaintiff and Class Counsel had adequate  information with which to evaluate their claims. (Harris Declaration, ¶ 8.)

**F. The Recommendations of Experienced Counsel Favor Approval Of the Settlement**

Class counsel, highly experienced in class-action  litigation, view this as a good result for the class. (Harris Declaration, ¶¶ 20-22; Exhibit 4 to Harris Declaration, Benowitz Declaration, ¶ 15; see *Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. 2011) ("The recommendations of counsel are given great weight since they are most familiar with the facts of the underlying litigation.")

**G. No Attorneys General Object**

Here, no attorneys general are involved, but the State of California was given notice of the settlement and has not objected. *Browning*, 2007 WL 4105971 at * 12 (holding that where governmental agencies were given notice of the settlement and did not object, factor weighed in favor of settlement.)

**H. Class Members' Positive Reaction Warrants Final Approval**

The Representative Plaintiff supports the settlement. (See, declaration of Plaintiff, attached as exhibit 3 to Harris Declaration.) Of the over 600 class members

notified of the settlement, no class members have opted out, or objected.  (Beliveau

Declaration., ¶¶ 6-13.) The reaction of the class demonstrates that the overwhelming

majority of the class supports the settlement, weighing in favor of approval. See

*Hanlon*, 150 F.3d at 1027; *In re Netflix Privacy Litig*., No. 11-cv-00379, 2013 WL

1120801, at *8 (N.D. Cal. March 18, 2013) (holding that low rates of opt-outs and

objections weighed in favor of settlement approval).

Given the favorable terms of the settlement and the rigorous manner in which

these terms were negotiated, the proposed settlement is a fair, reasonable and

adequate compromise of the issues in dispute and merits final approval.

## 1. PAGA Settlement

District courts have found it appropriate to approve a PAGA settlement where

"the settlement terms (1) meet the statutory requirements set forth by PAGA, and (2)

are fundamentally fair, reasonable, and adequate in view of PAGA's public policy

goals." *Chamberlain v. Baker Hughes, a GE Co., LLC*, No. 1:19-cv-00831-DAD-

JLT, 2020 WL 4350207, at *4 (E.D. Cal. July 29, 2020). Here, these standards are

met.

## I.  Pre-Certification Settlements

Settlements that occur before formal class certification also require a higher

standard of fairness. *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 458 (9th Cir.

2000). In reviewing such settlements, in addition to considering the above factors,

the court also must ensure that "the settlement is 'not the product of collusion

among the negotiating parties.'" *In re Bluetooth Headset Prods. Liab. Litig.*, 654

F.3d 935, 947 (9th Cir. 2011) (quoting In re Mego, 213 F.3d at 458).

Signs of subtle collusion include:

(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a clear sailing arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *Id.* (internal quotations marks and citations omitted).

## J.  No Evidence of Collusion

Here, the Agreement does not include any indication of a collusive deal. The

first factor is not present, as all class members are entitled to monetary relief based

on the number of shifts worked during the Class Period. There is also no "clear

sailing" provision because the attorneys' fees, discussed below, represent a

reasonable percentage of the common settlement fund and are also below the

lodestar. *Roes v. SFBSC Mgmt.*, 944 F.3d 1035, 1051 (9th Cir. 2019), (quoting

Staton, 327 F.3d at 954.)

Here, counsel will request fees up to $41,666.00 and costs up to $12,500.

(Agreement ¶ 5.2.) When deciding to award attorney's fees and costs, the Court has

discretion in a common fund case to choose either (1) the lodestar method or (2) the

percentage-of-the-fund. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir.

2002). Under the percentage-of-recovery method, twenty-five percent of a common

fund is the benchmark for attorneys' fees award. See, e.g., *In re Bluetooth*, 654 F.3d at 942. However, common fund awards are frequently awarded in excess of this figure. *Singh v. Roadrunner Intermodal Services, LLC*, supra, 2018 WL 2412325, at *5.

Class Counsel asserts have spent over 150 hours litigating this action and their lodestar incurred to date exceeds $100,000. (Harris Declaration, ¶¶ 19, 23-26; Benowitz Declaration, ¶¶12-13.) We estimate that we will spend 25 more hours through final approval. (Harris Declaration, ¶ 19.) Counsel thus asserts the requested maximum sum of $41,666.00 represents significantly less than the lodestar amount to date, even when excluding the value of any future work to be performed. Class counsel has also incurred costs of $10,333.50, with the maximum cost award capped at $12,500. (Agreement, ¶ 5.2; Harris Declaration, ¶ 19; Benowitz Declaration, ¶ 13.)

Counsel obtained a result for the class members, assuming a substantial risk in litigating this action on a contingency fee basis, while incurring costs without the guarantee of payment for its litigation efforts. Further, the agreement does not contemplate a disproportionate cash allocation between counsel and the class, particularly when considering that the value of counsel's lodestar far exceeds the value of the fee award. Accordingly, given that counsel will not receive a disproportionate amount of the settlement agreement, and since the settlement is non-reversionary, the issue of a clear sailing arrangement does not apply.

The service award, is also not indicative of a collusive deal because a $3,000 award amount is "presumptively reasonable" in the Ninth Circuit. See, e.g., *Smith v. Am. Greetings Corp.*, No. 14-cv-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016) ($5,000 award presumptively reasonable; see, Agreement ¶ 5.3.)

In regards to the third factor, the proposed settlement is non-reversionary, with all unclaimed funds redistributed among class members or paid to the State Controller's office. (Agreement, ¶ 5.2.) See, also, *Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, No. 19-CV-06088-LB, 2020 WL 5074392, at *10 (N.D. Cal. Aug. 27, 2020).[4]

Importantly, the parties reached the proposed settlement after an extensive arm's-length, non-collusive mediation with the assistance of an experienced mediator in the wage and hour class action field, David Phillips. (Harris Declaration, ¶ 8; see *G. F. v. Contra Costa Cnty.*, No. 13-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015).

**K. Class Certification**

A class action is maintainable only if it meets the four Rule 23(a) prerequisites:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of

---

[4] Participation in mediation (as was done here) tends to support that the settlement is not collusive. *Singh v. Roadrunner Intermodal Services, LLC*, supra, 2018 WL 2412325, at *4.

the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the
class. Fed. R. Civ. P. 23(a).

In addition to the Rule 23(a) prerequisites, "parties seeking class certification
must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem
Prods., Inc.*, 521 U.S. 591, 614 (1997). Rule 23(b)(3), relevant here, requires that (1)
"questions of law or fact common to class members predominate over any questions
affecting only individual members" and (2) "a class action is superior to other
available methods for fairly and efficiently adjudicating the controversy." Fed. R.
Civ. P. 23(b)(3). The "pertinent" matters to these findings include:

(A) the class members' interests in individually controlling the prosecution or
defense of separate actions; (B) the extent and nature of any litigation concerning
the controversy already begun by or against class members; (C) the desirability or
undesirability of concentrating the litigation of the claims in the particular forum;
and (D) the likely difficulties in managing a class action. *Id*.

First, the Settlement Class comprises 607 employees potentially impacted by
the allegations raised in this case, and the individual joinder of that many persons
would be impracticable. See *Litty v. Merrill Lynch & Co., No*. CV 14-0425 PA
(PJWx), 2015 WL 4698475, at *3 (C.D. Cal. Apr. 27, 2015) ("[N]umerosity is
presumed where the plaintiff class contains forty or more members.").

Second, class members share common questions of law and fact pertaining

24

to whether Defendant violated wage and hour laws. The "commonality requirement has been 'construed permissively,' and its requirements deemed minimal." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-1020 (9th Cir. 1998). Commonality exists where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008).

Common questions of law and fact in this action include whether Defendants had a policy and practice of failing to pay employees for all missed meal periods and rest breaks, whether class members' were required to take rest and meal breaks on site and in possession of a communication device, whether Defendants provided complete and accurate wage statements, and whether Defendants failed to pay all wages owed to class members. See, e.g., FAC ¶ 32 b. Accordingly, the commonality requirement is met.

Third, Plaintiff's claims as the class representatives are typical of the class because Defendants allegedly failed to provide Plaintiff and all class members meal breaks and rest periods, complete and accurate wage statements, and because Defendants allegedly failed to pay Plaintiff and all class members all wages owed. (FAC ¶¶ 5-15; Plaintiff's declaration, ¶¶ 1-5; see, *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)/

The typicality requirement is satisfied here.  (See, FAC, ¶ 32 c.)

The representation is also adequate because there are no known conflicts of interest with proposed class members and Class Counsel is experienced in wage and hour class action lawsuits such as this. This requirement is satisfied if: (1) the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) Plaintiffs are represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).

Here, the proposed representative Plaintiff does not have individual interests in this litigation that conflict with the best interests of the class. In addition, the named Plaintiff is represented by counsel well versed in prosecuting wage and hour class actions, and other class actions. (Plaintiff Declaration, ¶¶ 1-10; Harris Declaration, ¶ 27; Benowitz Declaration, ¶¶ 4-11.)

Lastly, questions of law and fact common to class members predominate over questions affecting only individuals, and certification of a Rule 23(b)(3) opt-out settlement class action for purposes of settlement is superior to other available means of adjudicating this dispute. "In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b) (1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, the proposed class is maintainable under Rule 23(b) (3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair resolution of the

26

controversy. *Id*. (citing Fed. R. Civ. P. 23(b) (3)).

Here, common questions raised by Plaintiff's claims predominate over questions affecting only individual members of the proposed class. Plaintiff alleges that Defendants had a policy of requiring breaks by class members to be on site and in possession of a communication device, thus routinely denying class members rest and meal breaks, failed to provide complete and accurate wage statements, and failed to reimburse employees all wages owed to them. (FAC, ¶¶ 5-15.) Plaintiff alleges Defendants' wage and hour policies were uniform and violated California law, thus establishing that the predominance requirement is met for purposes of provisional class certification. (*Id.*)

Accordingly, the requirements of Rule 23 are met and thus that certification of the class for settlement purposes is appropriate.

## L. PAGA Approval

The court must review and approve any civil penalties sought as part of a proposed settlement agreement pursuant to PAGA. (Cal. Lab. Code § 2699 (1).) The court has discretion to award a lesser amount than the maximum civil penalty allowed under PAGA. (Cal. Lab. Code § 2699(e) (2).) The PAGA allocation here is reasonable since it is based on a settlement where liability is disputed and is a reasonable percentage of the total settlement amount. (Harris Declaration, ¶ 18.)

As discussed above, the Court will approve settlement of a PAGA claim if "the settlement terms (1) meet the statutory requirements set forth by PAGA, and (2)

27

are fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals." *Chamberlain*, 2020 WL 4350207, at *4. With respect to the statutory requirements, PAGA provides that 75% of civil penalties recovered must be allocated to the LWDA and 25% must be allocated to aggrieved employees. See *Chamberlain*, 2020 WL 4350207, at *4. That requirement is met here, as the PAGA recovery is $5,000, of which 75% is allocated to the LWDA and the remainder to class members. The Settlement is fair, reasonable, and adequate for the reasons discussed herein.

## IV.    CONCLUSION

The parties have negotiated a fair and reasonable settlement that almost certainly never would have been arrived at but for the use of a class action as a procedural device, a dedicated and informed Class Representative and experienced Plaintiff's counsel. Final Approval should thus be granted.

Dated: October 30, 2023          By:        /s/ Stephen M. Harris
                                             Stephen M. Harris
                                             Attorneys for Plaintiff ANNICA BOWEN
                                             A.K.A. ANNICA PALACIO