1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ANNICA B. BOWEN, on behalf of herself          No.  2:20–cv–2318–KJN
     and all others similarly situated,

12                                                   FINAL APPROVAL OF CLASS ACTION
                        Plaintiffs,                  AND PAGA SETTLEMENT; ORDER
13                                                   GRANTING ATTORNEYS' FEES, COSTS,
           v.                                        AND INCENTIVE AWARD
14
     JEA SENIOR LIVING HEALTH AND                    (ECF Nos. 53, 54.)
15   WELFARE BENEFIT PLAN, LLC, et al.,

16                      Defendants.

17

18         Presently pending before the court is plaintiff's unopposed motion for certification of a

19   Rule 23 class, final approval of the parties' class action and PAGA settlement, and award of fees,

20   costs, and incentive payment in this meal- and rest-break dispute.[1]  (ECF Nos. 53, 54.)  The court

21   held a fairness hearing on December 5, 2023, and no written or oral objections were asserted.

22         For the following reasons, the court CERTIFIES the settlement class; FINDS the class

23   notice was the best practicable; APPROVES the class action and PAGA settlement as fair,

24   reasonable, and adequate; AWARDS class counsel its attorneys' fees; GRANTS the request for

25   reimbursement of costs and administrator expenses; and GRANTS the request for a service award

26   to the named plaintiff.

27   ────────────────

28   [1] The parties previously consented to the jurisdiction of a magistrate judge for all purposes, 28
     U.S.C. § 636(a), and the case was reassigned to the undersigned.  (See ECF Nos. 48, 49, 51.)

1    **I.     BACKGROUND**

2        **A.  Factual and Procedural History**

3            Plaintiff alleges in the First Amended Complaint ("1AC") that she previously worked as a

4    non-exempt hourly-wage employee for defendants Empire Ranch, Willow Springs, and Blossom

5    Grove, who jointly ran Alzheimer care centers in Northern California.  (ECF No. 36 at ¶¶ 16-21.)

6    She alleges that from at least 2016 through 2021, defendants enforced policies and practices that

7    did not allow for her and other caregivers to take meal breaks despite working 5+ hours a day;

8    take rest breaks for every four hours worked; receive itemized wage statements; and receive all

9    wages owed at the conclusion of her employment.  (Id. at ¶¶ 6-7; see also Harris decl., ECF No.

10   40-1 at ¶ 6 (noting the approximate date another company took over management of the

11   facilities).)  Plaintiff alleges, in essence, that defendants deprived her and other caregivers of

12   breaks by requiring them to remain on site and in possession of their localized communication

13   devices at all times.  (Id. at ¶ 8.)  The 1AC asserts claims for failure to pay premiums on forfeited

14   rest and meal periods under Cal. Labor Code § 226.7 and 512; failure to pay timely wages under

15   Cal Labor Code § 203; and failure to provide accurate pay stubs under Cal. Labor Code § 226.

16   (Id. at 8-11.)  The 1AC also asserts an ancillary claim under Cal. Bus. Code § 17200 and a claim

17   for penalties under the Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2699.  (Id. at

18   11-15.)

19           Plaintiff filed a putative class action in California Superior Court, Los Angeles County on

20   April 30, 2020.  (See ECF No. 1.)  Defendants removed to the U.S. District Court for the Central

21   District of California and answered the complaint; the case was transferred to this district in

22   November of 2020.  (See id.)  After exchanging discovery, the parties participated in mediation in

23   June of 2021, executed a settlement agreement shortly thereafter, submitted an amended

24   complaint in January of 2022, and moved for preliminary approval in March of 2022.  (ECF Nos.

25   36; 40; 40-1 at ¶ 4.)  On June 9, 2023, the undersigned preliminarily certified the class,

26   preliminarily approved the settlement, and ordered notice to the class.  (ECF No. 52.)  On

27   October 30, 2023, plaintiff moved for final approval of the settlement and requested attorneys'

28   fees, costs, and incentive awards.  (ECF Nos. 53, 54.)  Defendant did not oppose.  (ECF No. 55.)

**B.  Terms of the Settlement**

The Settlement Agreement contains a release of all claims that are factually supported by the 1AC against defendants by the class, who are defined as "[a]ll current or former nonexempt caregivers working at the Willow Springs Facility, the Empire Ranch Facility, and/or the Blossom Grove Facility at any time between April 30, 2016, through September 2, 2021."  (ECF No. 40-2, at ¶ 1.4.)  The Agreement sets the PAGA period from April 20, 2019, to September 2, 2021.  (Id. at ¶ 1.27-1.29.)  The class and PAGA group consists of 607 employees who worked at one of these facilities during the relevant period.  (ECF No. 53-1 at ¶ 9.)

In return for the release of claims, the Settlement Agreement provides for a non-reversionary gross settlement amount of $125,000.  (ECF No. 40-2 at ¶ 1.19.)  This amount represents approximately a quarter of the potential damages for alleged missed rest breaks (at approximately $450,000), and approximately one-eighth of the potential maximum relief if additional penalties were to be found cognizable.  (ECF No. 53 at ¶¶ 15-16.)  The estimates are based on counsels' examination of discovery documents showing the number of breaks potentially at issue (13,863 work weeks) and the average hourly pay rate of class members (at $12/hour).  (Id. at ¶ 13.)  In arguing the settlement is fair, counsel notes the significant weaknesses in plaintiff's case, including among other things that defendants' facial policy appears to allow caregivers to leave the premises during breaks.  (Id. at ¶¶ 10-17.)

Plaintiff seeks to deduct from the $125,000 gross settlement amount (as allowed by the Settlement Agreement) the following:

(a)  Class representative incentive award of $3,000;

(b)  Class counsels' fees of $41,666.66 (one-third of the gross amount);

(c)  Class counsels' litigation costs of $10,333.50;

(d)  Settlement Administrator costs of $9,000; and

(e)  A PAGA payment of $3,750 to be paid to the Labor Workforce and Development Agency ("LWDA"), out of an overall PAGA award of $5,000.[2]

---

[2]  PAGA requires that 75% of PAGA penalties recovered go to the LWDA and 25% to the aggrieved employees.  Cal. Lab. Code § 2699(i).

3

(ECF No. 40-2 at ¶¶ 5.1-5.4; ECF No. 54.)  The above deductions, if fully approved, would yield a net settlement fund of $57,249.84.  (See id.)  This amount is to be divided between the 607 class members ($1,250 for the PAGA aggrieved workers, who are the same as the class members, with the remainder for the class), on a pro-rata basis, as determined by the number of workweeks the claimants worked during the class and PAGA periods.  (Id. at ¶ 5.5.)

**C. Notice to Class and Response**

The Settlement Agreement required the Settlement Administrator to mail out notices of the class action settlement within 30 days of the court's preliminary approval.  (ECF No. 40-2 at ¶ 3.4.)  It then allowed 45 days from the mailing of the notice of class action settlement for class members to:  (a) do nothing and receive a payment after final approval, (b) request to be excluded from the settlement ("opt out"), (c) object to the terms of the settlement, or (d) dispute their dates of employment and estimated recovery amount.  (Id. at ¶ 4.1; ECF No. 40-3 at ¶ 6 (the Class Notice).)  Those who opt out were notified they retained their right to sue but would receive no payment under the settlement; those who remained in would ultimately receive their individual settlement payment by check.  (ECF No. 40-2 at ¶¶ 1.20, 4.2; ECF No. 40-3 at ¶¶ 6(a) and (c).)  The Settlement Agreement also contained a procedure for distribution of the PAGA settlement should a class member opt out of the Rule 23 class settlement, and the class notice informed the class members that opting out of the Rule 23 class would not affect the PAGA settlement.  (ECF No. 40-2 at ¶ 5.6.2; ECF No. 40-3 at ¶ 6(c).)

The claims administrator mailed the approved notice to the 607 class members in June of 2023.  (ECF No. 53-3 at ¶ 6.)  165 notices were returned as undeliverable, but 153 of those were successfully forwarded to claimants at their updated addresses.  (Id. at ¶ 7.)  No objections or requests for exclusion were received by the administrator, class counsel, or the court, and no class member appeared at the December 5, 2023 fairness hearing to object.  (Id. at ¶¶ 10-12.)

///

///

///

///

1    **II.     DISCUSSION**

2           The parties seek:  (A) final certification of the Rule 23 settlement class, and reaffirmation

3    of plaintiff's appointment as class representative and appointment of her counsel as class counsel;

4    (B) final approval of the Rule 23 class action settlement; (C) final approval of the PAGA

5    settlement; and (D) approval of the requests for attorneys' fees, counsels' costs, administrator's

6    costs, and incentive award.  Ancillary to this, the parties seek an order for the Administrator to

7    distribute payments to the class members and the State of California in accordance with the

8    Settlement Agreement, and order dismissing this case with prejudice.  (ECF Nos. 53, 54, 55.)

9                    **Legal Standards – Rule 23 Class Settlements and PAGA Settlements**

10          When parties seek approval of a class action settlement, courts must analyze "both the

11   propriety of the certification and the fairness of the settlement."  Staton v. Boeing Co., 327 F.3d

12   938, 952 (9th Cir. 2003); see Rule 23(e)[3] ("The claims, issues, or defenses of a certified class—or

13   a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed,

14   or compromised only with the court's approval.").  Accordingly, the court considers whether the

15   class meets the certification requirements of Rule 23 and whether the proposed settlement is

16   "fundamentally fair, adequate, and reasonable."  Staton, 327 F.3d at 952.

17          Cases such as this often include a claim for penalties under the California Labor Code's

18   Private Attorneys General Act, which are distinct from class claims.  See Kim v. Reins Int'l Cal.,

19   Inc., 9 Cal. 5th 73, 86-87 (2020) ("[A] representative action under PAGA is not a class action,

20   [but rather one] on behalf of the government.") (quotations omitted).  This distinction is because

21   "[p]laintiffs may bring a PAGA claim only as the state's designated proxy, suing on behalf of all

22   affected employees."  Id. (emphases original); see Viking River Cruises, Inc. v. Moriana, 142 S.

23   Ct. 1906, 1914 (2022) (explaining how California law characterizes PAGA as creating a "type of

24   qui tam action" with the representative private plaintiff acting in place of the government)

25   (quoting Iskanian v. CLS Transp. Los Angeles, LLC, 59 Cal. 4th 348, 382 (2014) (overruled on

26   other grounds)).  Because a PAGA claim is not "a collection of individual claims for relief" like a

27   _____

28   [3] Citations to the "Rule(s)" are to the Federal Rules of Civil Procedure, unless otherwise noted.

class action, <u>Canela v. Costco Wholesale Corp.</u>, 971 F.3d 845, 855 (9th Cir. 2020) (discussing

<u>Kim</u>'s holding), PAGA claims "need not satisfy Rule 23 class certification requirements,"

<u>Hamilton v. Wal-Mart Stores, Inc.</u>, 39 F.4th 575, 583 (9th Cir. 2022).  However, like class action

settlements, PAGA <u>settlements</u> must be approved by the court.  Cal. Lab. Code § 2699(l)(2).

Courts in this circuit apply "a Rule 23-like standard," asking whether the settlement of the PAGA

claims is "fundamentally fair, reasonable, and adequate."  See <u>Haralson v. U.S. Aviation Servs.</u>

<u>Corp.</u>, 383 F. Supp. 3d 959, 972 (N.D. Cal. 2019).

### Analysis

**A.  Class Certification under Rule 23; Class Notice, Counsel, and Representative**

The court previously found:  (i) the requirements of Rule 23(a) and (b)(3) had been met

regarding the proposed class; (ii) plaintiff's counsel was adequate to act as class counsel;

(iii) plaintiff was an appropriate representative for the class; and (iv) the proposed notice was the

best practicable under the circumstances.  (ECF No. 52.)  The court's findings on these issues have

not changed, and no objections to these issues were raised.  Accordingly, there is no need for the

court to repeat the prior analysis here.  Thus, for the reasons stated in the previous order, the

findings on class certification, counsel, representative, and notice are reaffirmed and finalized for

purposes of this settlement.  See, e.g., <u>Carlin v. DairyAmerica</u>, 380 F. Supp. 3d 998, 1008 (E.D.

Cal. 2019) ("As a preliminary matter, the court notes that it previously certified a Rule 23(b)(3)

class.  Thus, it need not analyze whether the requirements for certification have been met and

may focus instead on whether the proposed settlement is fair, adequate, and reasonable.")

(quoting <u>Harris v. Vector Marketing</u>, 2012 WL 381202 at *3, at *7 (N.D. Cal. Feb. 6, 2012); <u>In re</u>

<u>Apollo Group Inc. Securities Litigation</u>, 2012 WL 1378677 at *4 (D. Ariz. Apr. 20, 2012) (same).

**B.  Final Approval of Proposed Settlement**

In considering whether a class action settlement is "fundamentally fair, adequate, and

reasonable," <u>Staton</u>, 327 F.3d at 952, Rule 23 requires the court to consider whether:  (1) the class

representatives and class counsel have adequately represented the class; (2) the proposal was

negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal

treats class members equitably relative to each other.  Rule 23(e)(2).

Having already completed a thorough preliminary examination of the agreement, the court

reviews it again, mindful that the law favors the compromise and settlement of class action suits.

See In re Syncor ERISA Litig., 516 F.3d 1095, 1101 (9th Cir. 2008) (reminding that the Ninth

Circuit has declared a strong judicial policy in favor of settlement of class actions); Class

Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (same).  Ultimately, "the

decision to approve or reject a settlement is committed to the sound discretion of the trial judge

[who] is exposed to the litigants and their strategies, positions, and proof."  Staton, 327 F.3d at

953.

   **1.  Adequacy of representation**

To determine adequacy of representation under Rule 23(e)(2), the court may consider

whether the interests of the named plaintiff are "aligned with the interests of the class members."

See Cottle v. Plaid Inc., 340 F.R.D. 356, 376 (N.D. Cal. 2021).  In addition, a finding that "class

counsel are experienced and competent" supports a conclusion that the class is adequately

represented.  Id. (citing In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995) ("Parties

represented by competent counsel are better positioned than courts to produce a settlement that

fairly reflects each party's expected outcome in litigation.")).  This first factor is redundant of

Rule 23(a)(4) and 23(g).  Mandalevy v. Bofi Holding, Inc., 2022 WL 1556160, at *6 (S.D. Cal.

May 17, 2022); 4 William B. Rubenstein, Newberg on Class Actions § 13:48 (5th ed. 2020)).

Here, plaintiff's interests are aligned with those of class members, as they share a

common interest in challenging the alleged wrongful wage and hour policies and seek the same

relief under the same set of facts and legal theories.  (See ECF No. 36.)  Further, class counsel are

clearly experienced in class action litigation.  (See ECF Nos. 53-1 and 53-5 (counsels'

declarations detailing other cases where they have been appointed class counsel in wage and hour

actions).)  Because plaintiff showed the adequacy prerequisite was satisfied under Rule 23(a), the

court finds the requirement under Rule 23(e)(2) is also satisfied.  See Flores v. Dart Container

Corp., 2021 WL 1985440, at *5 (E.D. Cal. May 17, 2021) ("Because the court has found that the

proposed class satisfies Rule 23(a)(4) for purposes of class certification, the adequacy factor

under Rule 23(e)(2)(A) is also met").).

7

1

    **2.  Arm's Length Negotiation**

2

    The second factor requires the court to consider whether the proposed settlement was

3

negotiated at arm's length.  Rule 23(e)(2)(B); Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965

4

(9th Cir. 2009) (noting the importance of evaluating whether the settlement was the product of

5

"an arms-length, non-collusive, negotiated resolution").  The inquiry of collusion addresses the

6

possibility that the settlement agreement is the result of either "overt misconduct by the

7

negotiators" or improper incentives of class members at the expense of others.  Staton, 327 F.3d

8

at 960.  The Ninth Circuit has observed that "settlement class actions present unique due process

9

concerns for absent class members" because the "inherent risk is that class counsel may collude

10

with the defendants, tacitly reducing the overall settlement in return for a higher attorneys' fee."

11

In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) (internal quotation

12

marks, citations omitted).  Thus, the court is to examine the agreement for "subtle signs" of self-

13

dealing by counsel, such as where:  (a) "counsel receive a disproportionate distribution of the

14

settlement, or [] the class receives no monetary distribution but class counsel are amply

15

rewarded"; (b) payment of attorneys' fees occurs "separate and apart from class funds" and goes

16

unopposed (a "clear sailing" agreement), which "carries the potential of enabling a defendant to

17

pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement

18

on behalf of the class"; or (c) "the parties arrange for unused funds to revert to defendants rather

19

than be added to the class fund."  Id. at 947 (cleaned up).

20

    Here, the proposed settlement is the product of lengthy negotiations between the parties

21

after the exchange of sufficient discovery.  The court notes none of the "subtle signs" are present

22

here, as counsels' attorney fee request is typical for these kinds of wage-and-hour claims (ECF

23

No. 54) and there is no reversion of funds to defendants (ECF No. 40-2 at ¶ 1.19).  Thus, the

24

court finds adequate negotiation here.  See, e.g., Chambers v. Whirlpool Corp., 980 F.3d 645, 669

25

(9th Cir. 2020) (finding no collusion where, among other things, "the parties settled via arm's

26

length negotiations before an experienced mediator"); Fraley v. Facebook, Inc., 966 F. Supp. 2d

27

939, 942 (N.D. Cal. 2013) (holding that a settlement reached after informed negotiations "is

28

entitled to a degree of deference as the private consensual decision of the parties").

### 3. Adequacy of Relief Provided to the Class

The "adequacy of relief" determination requires consideration of four sub-factors:

    i.    the costs, risks, and delay of trial and appeal;
    ii.   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    iii.  the terms of any proposed award of attorneys' fees, including timing of payment; and
    iv.  any agreement required to be identified under Rule 23(e)(3).

See Rule 23(e)(2)(C).  The amount offered in the proposed settlement agreement is generally the most important consideration of any class settlement.  See Bayat v. Bank of the West, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing In re HP Inkjet Printer Litig., 716 F.3d 1173, 1178–79 (9th Cir. 2013)).

### i. Costs, risks, and delay vs. settlement amount and scope of released claims

In determining whether the amount offered is fair and reasonable, courts compare the proposed settlement to the best possible outcome for the class.  See Rodriguez, 563 F.3d at 964. A "central concern" in evaluating a class settlement "relate[s] to the cost and risk involved in pursuing a litigated outcome." Feltzs v. Cox Comm's Cal., LLC, 2022 WL 2079144 at *9 (C.D. Cal. Mar. 2, 2022) (quoting Rule 23(e), 2018 Advisory Committee Notes [modification in original].)  The the inquiry is one of balance, and "a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000).  Approval of settlement is "preferable to lengthy and expensive litigation with uncertain results."  Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Here, the parties agreed to settle this case for a non-reversionary sum of $125,000, inclusive of the PAGA payments, for the 607 class members.  (ECF No. 40-2 at ¶ 1.19.)  After deductions for an incentive award, attorneys' fees, litigation costs, settlement administrator fees, and the PAGA payment to the LWDA (assuming full approval of the requests), the court calculates a net settlement fund of $57,249.84.  (Id. at ¶¶ 5.1, 5.2, 5.3, 5.4; ECF Nos. 53, 54.)  The Settlement Administrator estimates the "average estimated individual participating class member payment is $88.69, and the highest estimated Individual Participating Class Member payment is

1   $1,003.86." (ECF No. 53-3 at ¶ 14.)

2       The net settlement amount represents approximately a quarter of the potential damages for

3   missed rest breaks (at just under $500,000), and approximately one-eighth to one-tenth of the

4   potential maximum relief if full penalties were to be found cognizable. (ECF No. 40-1 at ¶ 13-

5   15.) The estimates are based on counsels' examination of discovery showing the number of

6   breaks potentially at issue (13,863 work weeks) and the average hourly pay rate of class members

7   (at $12/hour). (Id. at ¶ 13.) However, the court concurs with counsels' analysis concerning the

8   significant weaknesses in plaintiff's case, which includes not only the general uncertainties with

9   litigating a case through trial, but specifically that defendants' facial policy appears to have been

10  to allow caregivers to leave the premises during breaks. (Id. at ¶¶ 10-17.) The settlement amount

11  results in a recovery that is in range of settlements that have been approved by California courts.

12  See, e.g., In re Mego, 213 F.3d at 458-59 (affirming a settlement of one-sixth the potential

13  recovery for weak and risky case); O'Connor v. Uber Techs., Inc., 201 F. Supp. 3d 1110, 1129

14  (N.D. Cal. 2016) (noting that 10% of the verdict value of non-PAGA claims is generally

15  considered "the low end of reasonable recovery.").

16      The court also finds the settlement amount to be fair and reasonable in light of what the

17  class "actually gave up by settling." Campbell v. Facebook, Inc., 951 F.3d 1106, 1123 (9th Cir.

18  2020). The Settlement Agreement provides that each class member, by accepting their portion of

19  the settlement and not opting out, will release defendants from:

20          [A]ny and all claims, debts, liabilities, demands, obligations,
            guarantees, costs, expenses, attorneys' fees, damages, actions or
21          causes of action, contingent or accrued, that were alleged or that
            reasonably could have been alleged based on the facts alleged in the
22          Action, including without limitation, claims for violation of the
            California Labor Code, the Business & Professions Code (including
23          Section 17200, et seq.), any IWC Wage Order; claims for restitution
            and other equitable relief, interest, wages, off-the-clock time, meal
24          and rest period penalties, waiting time penalties, penalties for
            inaccurate wage statements, penalties pursuant to [PAGA], penalties
25          of any nature whatsoever, and any other benefit claimed that were
            alleged or that reasonably could have been alleged based on the facts
26          alleged in the Action.

27  (ECF No. 40-2 ¶ 6.1; see also ¶ 6.3 for the Class Representative release terms; ¶ 6.2 for the

28  PAGA release—regardless of whether the individual opts out of the Rule 23 class.)

The court previously expressed concern about portions of this release language, as the parties are likely aware that they cannot release claims for any "violation of the California Labor Code, the Business & Professional Code[, and] any IWC Wage Order" that is unsupported by the facts of the case.  Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010) (noting class action settlement agreements cannot release claims of absent class members that are unrelated to the factual allegations of the class complaint).  The parties' saving grace with the language is that it explicitly ties the release to "causes of action . . . that were alleged or that reasonably could have been alleged based on the facts" of the case.  This language is sufficient to allow any future potential litigant to raise the scope of the release so all can determine the preclusive effect of the Agreement on whatever facts present themselves.  Thus, the court finds the scope of release to be fair and reasonable when compared to the amount of the settlement.  Campbell, 951 F.3d at 1123.

Finally, though the parties have engaged in discovery allowing them to broadly evaluate the case's merits and defendants' potential maximum exposure, the court recognizes that significant discovery still lies ahead.  When coupled with this court's heavily impacted caseload and the risk of further delay in a post-trial appeal before the Ninth Circuit, it is clear that these significant delays would persist if the parties decided to take this case to trial.

Given the above, the costs, risks, and delay of any potential trial weigh in favor of settlement.  This finding is in line with approved settlements in other cases in the Ninth Circuit.  See, e.g., Benitez v. Western Milling, LLC, 2020 WL 309200, at *8 (E.D. Cal. Jan. 21, 2020) (observing a recovery rate of 13% when PAGA penalties were included was "consistent with percentage recoveries California district courts have found to be reasonable"); Deaver v. Compass Bank, 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015) (finding a settlement that equaled "10.7 percent of the total potential liability exposure, before any deductions for fees, costs, or incentive awards" was "fair and reasonable"); In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving a settlement that was "just over 9% of the maximum potential recovery asserted by either party").

///

///

11

### ii.   Effectiveness of proposed method of distributing relief

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." Hilsley v. Ocean Spray Cranberries, Inc., 2020 WL 520616 at *7 (S.D. Cal. Jan. 31, 2020) (citing "Final approval criteria— Rule 23(e)(2)(C)(ii): Distribution method," 4 Newberg on Class Actions § 13:53 (5th ed.)).  "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims."  Rule 23(e), 2018 Advisory Committee Notes.  The proposed method for processing claims "should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."  Id.

Under the Settlement Agreement, class members did not have to submit claims to receive payment.  Instead, they were identified through defendants' employment records, received a notice calculating each member's potential award based on how many workweeks worked during the class period (as determined by the employment records), and were given an opportunity to dispute the calculations.  (ECF No. 40-2 at ¶¶ 3.3, 3.4, 5.5.2.)  The Settlement Administrator has notified all class members in the best manner practicable, and none receiving the notice chose to opt out or object to the Agreement's terms.  (ECF No. 68-2.)  This method of distributing relief is "simple and effective." Loreto v. Gen. Dynamics Info. Tech., Inc., 2021 WL 1839989, at *10 (S.D. Cal. May 7, 2021); Jackson v. Fastenal Co., 2021 WL 5755583 at *11 (E.D. Cal. Dec. 3, 2021) (finding "the proposed method of distributing relief is effective and weighs in favor of a finding that the settlement agreement is fair, reasonable and adequate" where the class members did not have to file a claim).  Thus, this factor weighs in favor of final approval of the settlement.

### iii.   Terms of proposed award of attorneys' fees

When evaluating the terms of a settlement, "courts must scrutinize 'the terms of any proposed award of attorneys' fees.'" McKinney-Drobnis v. Oreshack, 16 F.4th 594, 607 (9th Cir. 2021) (quoting Rule 23(e)(2)(C)(iii)).  The Ninth Circuit has explained, "the new Rule 23(e) makes clear that courts must balance the proposed award of attorneys' fees vis-à-vis the relief provided for the class in determining whether the settlement is 'adequate' for class members." Id. In settlements that produce a common fund, courts may use either the lodestar method or

percentage-of-recovery method to determine the reasonableness of attorneys' fees.  In re Bluetooth, 654 F.3d at 942.  Under the percentage method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award."  Id.  However, a departure may be justified based on "special circumstances."  Id.  The California Supreme Court also has endorsed fee awards based on a percentage of recovery and use of a lodestar crosscheck.  See Laffitte v. Robert Half Internat. Inc., 1 Cal. 5th 480, 486, 504-06 (2016) (approving a fee award of one-third of the gross settlement in a wage and hour class action using a percentage method).

Here, the Agreement provides that class counsel will request attorneys' fees up to 33.33% percent (one-third) of the gross settlement amount, valued at $41,666.00.  (ECF No. 40-2 at ¶ 5.2.)  This is, in fact, the amount counsel now seeks.  (ECF No. 54.)  Counsels' request is not so disproportionate to the relief provided to the class that it calls into question the fairness of the proposed settlement.  Baten v. Michigan Logistics, Inc., 2022 WL 17481068, at *6 (C.D. Cal. Dec. 6, 2022) ("The requested attorneys ' fees of one-third of the Settlement does not represent a disproportionate distribution for purposes of determining collusion.").  This also comports with California precedent.  Laffitte, 1 Cal. 5th at 504-06.  Further, as the Settlement Agreement awards each class member a portion of the fund on a pro rata basis, any lowering of this amount by the court would allow for those unallocated funds to be distributed to class members.  Given this, the court finds counsels' fee request does not weigh against approval of the settlement.  McKinney-Drobnis, 16 F.4th at 607.

### iv.    Agreements made in connection with the proposal

The court must consider any agreement that is required to be identified under Rule 23(e)(3).  Rule 23(e)(2)(C)(iv).  Specifically, "parties seeking approval must file a statement identifying any agreement made in connection with the proposal."  Rule 23(e)(3).  Aside from what has been identified in this order regarding class counsels' fees and costs, administrator costs, and incentive awards, the Settlement Agreement constitutes the entire agreement.  (ECF No. 40-2 at ¶ 8.6.)  Thus, this weighs in favor of approving the settlement.

///

///

1

**4.   Equitable Treatment of Class Members**

2         The fourth factor addresses whether the proposed settlement agreement "treats class

3   members equitably relative to each other."  See Rule 23(e)(2)(D).  "A distribution of relief that

4   favors some class members at the expense of others may be a red flag that class counsel have sold

5   out some of the class members at the expense of others, or for their own benefit."  Hilsley, 2020

6   WL 520616 at *7 (citation omitted).  This inquiry considers both equity across sub-categories of

7   the class, and equity between class representatives and unnamed class members.  Id.

8         Here, the Settlement Agreement does not unfairly discriminate between any member of

9   the class, as it provides for a pro rata distribution of the fund based on the number of workweeks

10  each class member worked.  (ECF No. 40-2 at ¶¶ 5.5.)  This proposed distribution plan supports

11  final approval.  See Cooks v. TNG GP, 2021 WL 5139613 at *4 (E.D. Cal. Nov. 4, 2021)

12  (observing a calculation of payments to class members "on a pro-rata basis based on the number

13  of compensable workweeks each member worked . . . is fair and treats class members equitably");

14  Gomez-Gasca v. Future AG Mgmt. Inc., 2020 WL 6149688 at *4 (N.D. Cal. Oct. 20, 2020)

15  (same).

16        As to equitable treatment between the class representative and the class members, the

17  court incorporates its discussion below regarding the incentive award.  Given that the Settlement

18  Agreement does not attempt to strip the court of its discretion on this matter, this is not a source

19  of impermissible inequity.  Staton, 327 F.3d at 977.

20        **5.   Reaction of Class Members to the Settlement**

21        "[T]he absence of a large number of objections to a proposed class action settlement raises

22  a strong presumption that the terms of a proposed class action settlement are favorable to the class

23  members."  Nat'l Rural Telecomms., 221 F.R.D. at 529; see also Cottle, 340 F.R.D. at 376

24  (observing the court may assess the reaction of class members by considering "how many class

25  members submitted . . . objections" at the final approval stage).

26        After receiving the court-approved notice, class members reacted favorably to the

27  proposed settlement terms by not requesting exclusion or submitting objections.  (ECF No. 53-3

28  at 10-12.)  This "strongly supports settlement."  Chun-Hoon v. McKee Foods Corp., 716 F. Supp.

2d 848, 852 (N.D. Cal. 2010); see also Taylor v. Populous Group, LLC, 2023 WL 139724, at *3 (S.D. Cal. Jan 9, 2023) (finding the class members' reaction to the settlement—after notice of the settlement terms and "an opportunity to express their reactions"—supported final approval where no objections to the settlement were filed); Manzo v. McDonalds Rests. of Cal., Inc., 2022 WL 4586236, at *8 (E.D. Cal. Sept. 29, 2022) (same).  Accordingly, this factor weighs in favor of final approval.

### C. Settlement of PAGA Penalties Claim

The 1AC's Sixth Cause of Action asserts a claim for PAGA penalties, on behalf of plaintiff and all aggrieved employees, for civil penalties associated with the Labor Code violations asserted in the class claims.  (ECF No. 36 at 12-15.)  PAGA claims and their settlement are fundamentally distinct from Rule 23 class claims.  See Hamilton, 39 F.4th at 583 ("Rule 23 class actions and PAGA actions are so conceptually distinct that class action precepts generally have little salience for PAGA actions."); Canela, 971 F.3d at 852 (noting "the different remedial schemes that exist in Rule 23 class actions and PAGA suits").

### Legal Standards

Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of herself and other current or former employees.  Cal. Lab. Code § 2699(a).  "Plaintiffs may bring a PAGA claim only as the state's designated proxy, suing on behalf of all affected employees."  Kim, 9 Cal. 5th at 87 (emphasis in original).  Because a PAGA plaintiff serves "as the proxy or agent of the state's labor law enforcement agencies," "a judgment in th[e] action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government."  Arias v. Superior Ct., 46 Cal. 4th 969, 986 (2009).  "Unlike a class action, there is no mechanism for opting out of a judgment entered on a PAGA claim."  Amaro v. Anaheim Arena Mgmt., LLC, 69 Cal. App. 5th 521, 541 n.5 (4th Dist. 2021) (internal quotes omitted).  Thus, a PAGA plaintiff owes a duty both to their "fellow aggrieved workers," who will be inalterably bound by the judgment on the PAGA claim, and to the public at large because the PAGA plaintiff acts "as the statute's name suggests, as a private attorney general."  O'Connor, 201 F. Supp. 3d at 1134.

Under PAGA's remedial scheme, civil penalties recovered are distributed between "the aggrieved employees" (25%) and the LWDA (75%).  Cal. Lab. Code § 2699(i).  Any settlement of PAGA claims must be approved by the court; and the proposed settlement must be sent to the LWDA alongside submission to the court.[4]  Cal. Lab. Code § 2699(*l*)(2).  Although the court does not evaluate the settlement of PAGA claims under the Rule 23 criteria, it must still inquire into the fairness of the PAGA settlement.  "[I]n reviewing a settlement that includes both a Rule 23 class and a PAGA claim, the court must closely examine both aspects of the settlement."  O'Connor, 201 F. Supp. 3d at 1133.  Based on the best guidance at hand, district courts typically apply "a Rule 23-like standard" asking whether the settlement of the PAGA claims is "fundamentally fair, reasonable, and adequate."  Haralson, 383 F. Supp. 3d at 972; see Mondrian v. Trius Trucking, Inc., 2022 WL 2306963, at *7 (E.D. Cal. June 27, 2022) (noting lack of binding standard for approving PAGA settlements and adopting "fundamentally fair, reasonable, and adequate" standard based on LWDA's O'Connor commentary).

"While a proposed settlement must be viewed as a whole, the [c]ourt must evaluate the adequacy of compensation to the class as well as the adequacy of the settlement in view of the purposes and policies of PAGA.  In doing so, the court may apply a sliding scale."  O'Connor, 201 F. Supp. 3d at 1134 (cleaned up).  "For example, if the settlement for the Rule 23 class is robust, the purposes of PAGA may be concurrently fulfilled."  Id.  Non-monetary relief provided through the settlement may also satisfy PAGA's interests in enforcement and deterrence.  Id. at 1134-35.  Conversely, in cases where a settlement provides "relatively modest" amounts in settlement of the class claims compared to their verdict value, and there is no non-monetary relief provided, the PAGA aspect of the settlement must stand on its own to "substantially vindicate" PAGA's policy interests.  Id. at 1135.

///

///

---

[4]  The complaint states the LWDA was provided with written notice of the suit in April of 2020 at the inception of this case, but the LWDA did not respond.  (ECF No. 36 at ¶¶ 63-64.)  Counsel asserts the LWDA received a copy of the Settlement Agreement.  (ECF No. 53-1 at ¶ 10.)

16

**Analysis**

Here, the Settlement Agreement provides for $5,000 in PAGA penalties, out of the gross settlement amount of $125,000.  (ECF No. 40-2, ¶¶ 10, 17.)  Class counsel estimates, on the high end, that PAGA penalties at trial could be as much as $160,000 if calculated at $100 per violation.  (ECF No. 40-1 at ¶ 16.)  However, the court concurs with counsels' assessment regarding the uncertainty of the case and notes the cases cited in counsels' declaration indicating PAGA penalty assessments at a fraction of that amount.  See, e.g., Carrington v. Starbucks Corp., 30 Cal. App. 5th 504, 529 (2018) (noting the trial court's discretionary authority to award lesser penalties where defendant exercised a good faith attempt to comply with the Labor Code and affirming the trial court's award of $5 per violation).  The court is persuaded that PAGA's interests are satisfied given the difficulties plaintiff would have in litigating this case through trial and given the parties' participation in settlement talks after significant discovery and under the guidance of a neutral mediator.  O'Connor, 201 F. Supp. 3d at 1134.

Considering the other factors from Rule 23(e)(2), the court finds the PAGA portion of the settlement to be similarly fair and adequate for the PAGA members.  Though the PAGA payment will be much lower than the Rule 23 payments, this will ultimately benefit the class members, as PAGA's 75%-to-25% allocation would only shift funds away from the class members—who are the same set of individuals as the PAGA members.  See Rodriguez v. Danell Custom Harvesting, LLC, 293 F. Supp. 3d 1117, 1133 (E.D. Cal. 2018) (approving 0.6% PAGA payment because LWDA did not object to terms of settlement).  The LWDA did not object to the settlement.  See, e.g., Mancini v. W. & S. Life Ins. Co., 2018 WL 4489590, at *2 (S.D. Cal. Sept. 18, 2018) (taking LWDA's "acquiescence as indication that the settlement is presumptively reasonable").  Finally, the parties have accounted for the distinction between Rule 23 opt outs and PAGA's opt-out bar, as the settlement agreement and notice inform as much.  Amaro, 69 Cal. App. 5th at 541 n.5.

For these reasons, the court finds the settlement of the PAGA penalties claim to be fundamentally fair, reasonable, and adequate."  See Haralson, 383 F. Supp. 3d at 972.

///

17

**D. Attorneys' fees, costs, and incentive award**

Beyond final certification of the class and approval of the class action and PAGA settlements, plaintiff seeks an order granting: (1) an award of fees to class counsel; (2) reimbursement of litigation costs, including the settlement administrator's fees; and (3) an incentive award for the named plaintiff.  If approved, these fees would be deducted from the gross settlement amount prior to the pro rata distribution of the net fund.  (ECF No. 40-2 at ¶¶ 5.1-5.4.)

**1.  Class Counsels' Fees**

Pursuant to the Agreement, class counsel may seek attorneys' fees up to one-third of the gross settlement amount, or up to $41,666.66; counsel now seeks this amount.  (ECF No. 40-2 at ¶¶ 5.2.)  Counsel maintains this is reasonable in light of the benefit provided to the class, similar awards in this district in these kinds of cases, and counsels' lodestar cross check ($107,700, before any multiplier).  (ECF No 54.)  For the reasons that follow, the fees are granted.

**<u>Legal Standards</u>**

"[A] district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement."  <u>Staton</u>, 327 F.3d at 963.  Thus, a court "may not uncritically accept a fee request," but must review the time billed and assess whether it is reasonable in light of the work performed and the context of the case.  <u>Common Cause v. Jones</u>, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002); <u>see also</u> <u>McGrath v. County of Nevada</u>, 67 F.3d 248, 254 n.5 (9th Cir. 1995) (a court may not adopt representations regarding the reasonableness of time expended without independent review); <u>Sealy, Inc. v. Easy Living, Inc.</u>, 743 F.2d 1378, 1385 n.3 (9th Cir. 1984) (remanding an action for a thorough inquiry on the fee request when "the district court engaged in the 'regrettable practice' of adopting the findings drafted by the prevailing party wholesale" and explaining a court should not uncritically accept counsels' representations about the time expended).

The court has discretion to use either a lodestar or percentage of the common fund analysis to evaluate a fee request.  <u>In re Bluetooth</u>, 654 F.3d at 942.  Under a common fund calculation, "the court makes a fee award on the basis of some percentage of the common fund."  <u>State of Fla. v. Dunne</u>, 915 F.2d 542, 545 n.3 (9th Cir. 1990).  "The typical range of acceptable

1    attorneys' fees in the Ninth Circuit is one-fifth to one-third of the total settlement value, with 25%

2    considered the benchmark." <u>Vasquez v. Coast Valley Roofing</u>, 266 F.R.D. 482, 491 (E.D. Cal.

3    2010).  To evaluate whether the requested percentage is reasonable, courts may consider a

4    number of factors, including the results obtained for the class; the risk undertaken by class

5    counsel, including the complexity of the issues; the length of the professional relationship

6    between class counsel and the plaintiffs; and the market rate for similar cases, with a lodestar

7    cross-check.[5] <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1048-50 (9th Cir. 2002).  The

8    percentage of the common fund awarded as fees may be adjusted below or above the benchmark,

9    but the court's reasons for adjustment must be clear.  <u>Paul, Johnson, Alston & Hunt v. Graulty</u>,

10    886 F.2d 268, 272 (9th Cir. 1989).  Regardless of which method is used, the fees awarded must be

11    "fundamentally fair, adequate, and reasonable." <u>Staton</u>, 327 F.3d at 963 (quoting Rule 23(e)).

12         The fee applicant bears the burden of establishing that the fees and costs were reasonably

13    necessary to achieve the results obtained.  <u>See</u> <u>Fischer v. SJB-P.D., Inc.</u>, 214 F.3d 1115, 1121 (9th

14    Cir. 2000).  This can be done with records documenting the tasks completed and the amount of

15    time spent.  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983); <u>Welch v. Metropolitan Life Ins. Co.</u>,

16    480 F.3d 942, 945-46 (9th Cir. 2007).  "Where the documentation of hours in inadequate, the

17    district court may reduce hours accordingly." <u>Hensley</u>, 461 U.S. at 433.

18    *///*

19    *///*

20    *///*

21

22    [5] The lodestar method calculates attorney fees by "by multiplying the number of hours reasonably
expended by counsel on the particular matter times a reasonable hourly rate"—the product

23    yielding a presumptively reasonable fee.  <u>Florida</u>, 915 F.2d at 545 n. 3.  A full lodestar analysis
requires consideration of a host of factors—many of which either explicitly or generally align

24    with the other common-fund factors.  <u>See</u> <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 70 (9th
Cir. 1975); <u>Quesada v. Thomason</u>, 850 F.2d 537, 539 (9th Cir. 1988) (indicating the court should

25    "consider[ ] some or all twelve relevant criteria set forth in Kerr" to determine whether to deviate
from the lodestar).

26    In the attorneys' fee motion, counsel argues that because this case arises under the court's

27    diversity jurisdiction under California law, the Lodestar method is the proper method.  However,
as noted above, the California Supreme Court has approved the use of the common fund method.

28    <u>Laffitte</u>, 1 Cal. 5th at 504-06.

**Analysis**

Here, the court finds class counsels' request for $41,666.66 in attorneys' fees, or one-third of the common fund, to be reasonable.  As this action is before this court on diversity jurisdiction for alleged violations of state law, the court follows California's instructions regarding attorneys' fees.  Mangold v. Cal. Pub. Util. Comm'n, 67 F.3d 1470, 1478 (9th Cir. 1995).  Attorneys fees are awardable to a prevailing party in wage-and-hour disputes.  Cal. Lab. Code § 218.5 ("In any action brought for the nonpayment of wages . . ., the court shall award reasonable attorney s fees and costs to the prevailing party."); see also, e.g., Naranjo v. Spectrum Sec. Servs., Inc., 13 Cal. 5th 93, 117 (2022) (missed-break premium pay constitutes wages for purposes of California law).

Regarding the results obtained for the class and the risks and complexity of the issues, the undersigned references Section II.B.3.i ("Costs, risks, and delay vs. settlement amount") above.  Specifically, the undersigned notes the beneficial amount obtained for the class in the net settlement fund of $57,249.84.  (Id. at ¶¶ 5.1, 5.2, 5.3, 5.4; ECF Nos. 53, 54.)  This is estimated to provide an average payment of $88.69, with "the highest estimated Individual Participating Class Member payment [being] $1,003.86."  (ECF No. 53-3 at ¶ 14.)  While this amount is less than the hypothetical maximum damages found by counsel, the court reaffirms its findings concerning the significant risks and weaknesses in plaintiff's case.  (ECF No. 40-1 at ¶¶ 10-17.)  Counsel's request of 33% of the common fund is in line with similar awards in this district, though above the benchmark market rate.  Vasquez, 266 F.R.D. at 491.  The court also notes the contingency fee nature of counsel's representation in this case.  Clayton v. Knight Transp., 2013 WL 5877213, at *8 (E.D. Cal. Oct. 30, 2013) (acknowledging the contingent nature was "an important factor," but finding an award equal to the benchmark was appropriate where "the risks associated with this case are no greater than [those] associated with any other wage and hour action").  Cross-checking this award against the lodestar, the court finds the $41,666.66 amount reasonable, as counsel reported 148.6 hours of attorney time.  (ECF Nos. 53-5 and -7.)  Even at the median rate for Sacramento, the lodestar well exceeds one-third of the common fund.

///

///

1          **2.   Litigation and Settlement Administrator Costs**

2          <u>Legal Standards</u>

3          Generally, reimbursement of taxable costs is governed by 28 U.S.C. § 1920 and Rule 54.

4   In addition, costs may be awarded under California law to an employee who prevails on a PAGA

5   claim.  <u>See</u> Cal. Lab. Code § 2699(g).  Attorneys may recover reasonable expenses that would

6   typically be billed to paying clients in non-contingency matters.  <u>See</u> <u>Harris v. Marhoefer</u>, 24 F.3d

7   16, 19-20 (9th Cir. 1994).  "There is no doubt that an attorney who has created a common fund

8   for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that

9   fund."  <u>Ontiveros v. Zamora</u>, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (citation omitted).

10         **<u>Analysis</u>**

11         The Settlement Agreement allowed class counsel to seek "litigation costs and expenses

12  not to exceed $12,500." (ECF No. 40-2 at ¶ 5.2.)  However, plaintiff's counsel only requests fees

13  in the amount of $10,333.50 for filing fees, service of process fees, court-imposed fees, an expert

14  witness fee, and a fee for mediation services.  (ECF Nos. 53-7 at 6; 53-5 at ¶ 13.)  These costs are

15  routinely reimbursed, and so this request is granted.  <u>See</u> <u>Ontiveros</u>, 303 F.R.D. at 375 (finding

16  costs including to mediation, court fees, research, and expert fees were "reasonable litigation

17  fees" and approving class counsel's request for costs).

18         The Settlement Agreement also allowed for reimbursement of the Settlement

19  Administrator's costs, up to $9,000; this is the amount sought.  (ECF Nos. 40-2 at ¶ 5.1; 53-3 at

20  6.)  Settlement administrator costs are routinely reimbursed in class action settlements.  <u>See, e.g.</u>,

21  <u>Rodriguez v. Nike Retail Servs., Inc.</u>, 2022 WL 254349, at *7 (N.D. Cal. Jan. 27, 2022); Local

22  Rule 292(f)(11).  The court finds the requested costs to be reasonable and grants an award of

23  $9,000 to Simpluris.

24  ///

25  ///

26  ///

27  ///

28  ///

21

1        **3.   Incentive Award**

2        <u>Legal Standards</u>

3        A class representative may receive a share of class recovery above and beyond the

4  individual claim with a service payment, also known as an "incentive payment.  <u>Staton</u>, 327 F.3d

5  at 977 ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments").  However,

6  incentive payments for class representatives are not to be given routinely.  <u>See</u> <u>id.</u> at 975 (noting

7  that "[i]f class representatives expect routinely to receive special awards in addition to their share

8  of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class

9  members whose interests they are appointed to guard"); <u>Radcliffe v. Experian Info. Solutions</u>,

10  715 F.3d 1157, 1165 (9th Cir. 2013) ("[D]istrict courts must be vigilant in scrutinizing all

11  incentive awards.").

12        In evaluating a request for a service payment to a class representative, the court must

13  consider:  "the actions the plaintiff has taken to protect the interests of the class, the degree to

14  which the class has benefitted from those actions, the amount of time and effort the plaintiff

15  expended in pursuing the litigation, and any financial or reputational risks the plaintiff faced."  <u>In</u>

16  <u>re Apple Inc. Device Performance Litig.</u>, 50 F.4th 769, 786 (9th Cir. 2022) (cleaned up).  Further,

17  payments may recognize a plaintiff's "willingness to act as a private attorney general" in PAGA

18  actions.  <u>Rodriguez</u>, 563 F.3d at 958-59.  A service payment of $5,000 for the class representative

19  "is presumptively reasonable" in the Ninth Circuit.  <u>Richardson v. THD At-Home Servs.</u>, 2016

20  WL 1366952, at *13 (E.D. Cal. Apr. 6, 2016); <u>see also</u> <u>Gonzalez v. NCI Group, Inc.</u>, 2023 WL

21  373252, at *9 (E.D. Cal. Jan. 24, 2023) ("Courts routinely find rewards in the amount of $5,000

22  to be reasonable").

23        <u>Analysis</u>

24        Here, the Settlement Agreement allows for a class representative incentive award of

25  $3,000; that is what plaintiff now seeks.  (ECF Nos. 40-2 at ¶ 5.3; 53.)  Plaintiff argues this award

26  is appropriate because she voluntarily assumed the responsibilities of bringing and prosecuting

27  the action on behalf of all others similarly situated and devoted time and effort to keeping herself

28  informed of the litigation.  Specifically, plaintiff states this included:  "(a.) Consulting with my

counsel regarding their investigation into the allegations of the lawsuit relating to Defendants, both on the phone and in person, including in pre-filing communications; (b.) Providing factual data to my lawyers regarding my work at the Willow Springs Facility, and the working conditions, rules and terms of employment at Willow Springs, including issues relating to breaks; (c.) Reviewing relevant material relating to the present matter; (d.) Communicating with counsel regarding the progress of the case; (e.) Discussing settlement prospects and negotiations with my lawyers; ([and f.]) Being available on the date of the mediation for settlement related communications, as well as being available for consultations on other dates." Plaintiff states she has "personally met with counsel (and otherwise communicated with counsel) on multiple occasions," stating she has spent "a total of 40 hours in connection with this litigation." Plaintiff asserts her participation in the case involved "significant risks to myself, including exposure to a cost award if the litigation was unsuccessful." (See ECF 53-4 at ¶¶ 5-9.)

The court concurs with plaintiff's assertions. While plaintiff would have undertaken many of these actions if she had brought the individual litigation, her efforts have benefitted class members and PAGA aggrieved workers with an award that they may not have otherwise obtained. Staton 327 F.3d at 977 (benefit to the class supports a service award); Rodriguez, 563 F.3d at 958-59 (willingness to act as a private attorney general supports service award). The hours plaintiff spent in connection with the litigation support an award. Greer v. Dick's Sporting Goods, Inc., 2020 WL 5535399, at *4 (E.D. Cal. Sept. 15, 2020) (noting this district has awarded service payments for "substantial efforts taken as a class representative when the plaintiff has undertaken at least 30 to 40 hours of work"). The risk that plaintiff would have been subjected to costs if she had lost at trial supports an award. See, e.g., Vasquez, 266 F.R.D. at 491 ("Class representatives undertook the financial risk that, in the event of a judgment in favor of defendant in this action, they could have been personally responsible for any costs awarded in favor of defendant."). The amount of plaintiff's request is reasonable in light of her actions and the standard service payment in this district. Richardson, 2016 WL 1366952 at *13. Thus, the court awards the named plaintiff a service award of $3,000.

///

**ORDER**

For the above reasons, it is HEREBY ORDERED that:

1. The Class Action Settlement Agreement and the PAGA Agreement, and the settlement embodied therein, is APPROVED as fair, reasonable, and adequate;

2. The certification of the Settlement Class as defined in this court's order of June 9, 2023 (ECF No. 52) is hereby CONFIRMED for purposes of the settlement of this Action;

3. The Notice to class members, as provided for by the Agreement, constituted the best notice practicable under the circumstances, and was valid, due, and sufficient notice to Class Members in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution;

4. The Representative Class Plaintiff and Class Counsel have fairly and adequately represented the interests of the Settlement Class members at all times in the action;

5. Settlement Class members who have not timely requested exclusion from the Settlement Class and any of their predecessors, successors, representatives, parent companies, subsidiaries, affiliates, heirs, executors, administrators, attorneys, successors, and assignees are hereby enjoined and barred from instituting, filing, commencing, prosecuting, maintaining, continuing to prosecute, directly or indirectly, as an individual or collectively, representatively, derivatively, or on behalf of them or in any other capacity whatsoever, any action in any state or federal court or any other tribunal, forum, or proceeding of any kind against the Released Parties that asserts any of the Released Claims as set forth in the Agreement;

6. Defendants are discharged from all further liability for the Released Claims to Settlement Class members;

7. Class Counsel's application for an award of fees of $41,666.66 and costs of $10,333.50 is fair and reasonable and is hereby GRANTED, subject to the fee division agreement of counsel;

///

8.   The request for an enhancement award of $3,000 to the named plaintiff is fair and reasonable and is hereby GRANTED;

9.   The $9,000.00 fees of Simpluris, the claims administrator are APPROVED;

10. The PAGA settlement of $5,000.00 is APPROVED, with 75% of this sum being paid to the State of California, and the remainder to Class Members with a PAGA claim, based on the Settlement Agreement of the parties;

11. The Action is hereby DISMISSED WITH PREJUDICE;

12. The Court RETAINS jurisdiction over this case for the limited purpose of administering the settlement, enforcing the settlement, and related matters; and

13. The Clerk of the Court shall enter this Order as a Final Judgment in the docket of this action.

Dated:  December 8, 2023

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

bowe.2318

25